295 So.2d 404

**Teresa HERBERT, a minor, etc.**

v.

**REGENCY APARTMENTS, INC.,**
a corporation, et al.

**SC 631.**

Supreme Court of Alabama.

May 23, 1974.

Madison W. O'Kelley, Jr., and W. S. Pritchard, Jr., Birmingham, for appellant.

Marshall H. Fitzpatrick, Birmingham, for appellee Regency Apartments, Inc.

Rives, Peterson, Pettus, Conway & Burge, Birmingham, for appellee Herbert Fowler.

MERRILL, Justice.

This appeal is from a summary judgment rendered in favor of appellees, Herbert Fowler and Regency Apartments, Inc., defendants in a suit based upon the doctrine of attractive nuisance filed by Teresa Herbert, a minor, suing by next friend.

The real issue presented is whether this court will extend the doctrine of attractive nuisance to a trailer parked in an apartment parking lot.

Appellant's three-count complaint, filed November 2, 1972, alleged that on October 5, 1972, appellee Regency Apartments, Inc., owned an apartment complex located on Montclair Road, Birmingham, Alabama, known as the Regency Apartments, and that appellee Herbert Fowler and the appellant, a nine-year-old girl, living with her parents, were residents of the Regency Apartments.

Appellant avers that at that time appellee Fowler owned a flatbed trailer which was attractive to children of the appellant's age and exceedingly dangerous when left unattended, unguarded and unattached to the ground or some stable object; further, that on and prior to October 5, 1972, the appellees, Fowler and Regency Apartments, had negligently caused and allowed this flatbed trailer to be parked and stored on the parking lot of the Regency Apartments in a place which was accessible to children and where children resorted to play, in an unguarded and unattended condition, with knowledge that the appellant was constant-

ly playing about the parking lot, that she was liable to be attracted to the trailer and that the appellant was liable to be injured as a result of the same.

The complaint further alleges that as a result of appellees' negligence, while the trailer was so parked on October 5, 1972, appellant was attracted by the trailer, climbed upon it and fell to the ground, a distance of approximately six feet, suffering serious injuries, including a broken arm; and appellant claimed $100,000.00 as damages.

Each of the defendants filed timely demurrers but they were never ruled upon by the court because the cause was first docketed for trial after July 3, 1973, the effective date of the Alabama Rules of Civil Procedure.

In October, 1973, both defendants filed motions for summary judgment under Rule 56 ARPC "on the ground that there is no genuine issue as to any material fact, and that the defendant is entitled to a judgment as a matter of law." The motion of defendant Fowler was based on the pleadings, the deposition of the nine-year-old plaintiff, the deposition and an affidavit of Fowler. The motion of defendant Regency Apartments was based on the pleadings, interrogatories to and answers of Regency Apartments, requests for admissions and its answers thereto, the deposition of plaintiff and the deposition of Fowler.

In opposition to the motions, plaintiff filed the affidavit of Madison W. O'Kelley, Jr., an attorney for plaintiff, to which was attached a photograph of the trailer.

At a hearing on October 24, 1972, the trial court granted the motions for summary judgment.

The pertinent facts before the court were that during 1967 or 1968, Herbert Fowler had constructed a flatbed metal trailer which was six feet wide and twelve feet long. The bed of the trailer rested on a single axle located below the center of the bed, and the trailer was supported by two wheels on each end of the axle. Each of these wheels were approximately fourteen inches high and were fitted with rubber tires. A metal tongue, approximately two feet in length, was attached to the front end of the bed, and a trailer hitch was attached to the tongue. The trailer was unpainted and rusty.

Approximately five or six weeks prior to October 5, 1972, Fowler had parked the trailer on the parking lot of the Regency Apartments close to a concrete retaining wall which separated the apartment parking lot from an unpaved lot to the south. The paved surface of the parking lot was elevated approximately two and one-half feet above the southerly lot, and the rear end of the trailer extended across the retaining wall and over the southerly lot. During the time the trailer was situated in this position, it was not attached or hitched to the ground or any stationary object, and the position of the wheels below the center of the bed allowed the trailer to be rocked or seesawed back and forth. There were no "danger" or "warning" signs situated on the trailer to deter its use for play purposes and no sideboards were present.

For approximately two or three weeks immediately preceding October 5, 1972, Teresa Herbert and her young friends, Kim Lavender, then age 9, Donna Lavender, then age 6, and Penny Bryan, then age 9, had been playing on and about the trailer. At times, the children would merely sit on the bed of the trailer and play cards while at other times they would jump up and down and run from one end of the trailer to the other, causing the trailer to rock or seesaw back and forth. This activity was observed by Fowler, the owner of the trailer, on several occasions when he arrived home from work. Fowler, on observing this dangerous activity, had instructed the children that they would have to get off the trailer if they intended to jump up and down and had instructed Teresa Herbert that the trailer was not a

"playhouse or a bounce board" and that she could not play on the trailer.

On October 5, 1972, Teresa got out of school at 3:00 P.M., studied until 3:30 P.M., and then went outside to the apartment parking lot and commenced playing on the trailer with her young friends, already named. This activity was observed that afternoon by Mrs. Elsie Auferoth, the resident manager of the Regency Apartments. On observing this activity, Mrs. Auferoth told the children to get off the trailer and warned them that they might get hurt. She had known the trailer was parked on the lot for about one week prior to October 5, 1972.

At approximately 4:00 P.M. on this same afternoon, Teresa was standing on the rear end of the trailer situated nearest the concrete retaining wall, which caused this rear end to rock or seesaw downward. At that time, her young friends unexpectedly jumped onto the front end of the trailer which caused the end on which Teresa was standing to suddenly rock upward. This upward motion of the rear end resulted in Teresa's falling off the trailer onto the unpaved lot to the south of the parking lot.

As a result of this fall, Teresa Herbert sustained a fractured left arm and was taken to Children's Hospital in Birmingham, where a metal pin was placed through her elbow. Teresa remained in the hospital with the metal pin intact for approximately three weeks.

In her deposition, Teresa testified that she had been warned by Mr. Fowler not to play on the trailer, that her father had instructed her not to play on it and that their maid had also warned her.

In addition to the above recitals, Fowler stated in his deposition that on the day of the accident, Lisa Herbert, the mother of Teresa Herbert, told him that Teresa had been injured when she fell while jumping off the trailer and that she had warned Teresa many times not to play on the trailer. He further testified that he had last seen Teresa Herbert playing on the trailer about a week prior to the accident, that at that time, Teresa was running and jumping off the trailer, and that he had instructed her to refrain from such activity.

Madison W. O'Kelley, Jr. stated in his affidavit that in his opinion, the trailer was imminently appealing to children and when utilized by children for play purposes, constituted an inherently dangerous object, especially so when situated with one end extending across the concrete retaining wall and over the lower lot to the south; further, that the trailer was situated in an open place and was easily accessible to children.

In City of Dothan v. Gulledge, 276 Ala. 433, 163 So.2d 217, an attractive nuisance case involving an eight-year-old boy, this court said:

> "The attractive nuisance doctrine applies to one who maintains dangerous instrumentalities or appliances on his premises of a character likely to attract children in play, or permits dangerous conditions to remain thereon with the knowledge that children are in the habit of resorting thereto for amusement. Williams v. Bolding, 220 Ala. 328, 124 So. 892.

> "The doctrine is not supported unless the defendant has on his premises a condition which is naturally attractive to children at that place and is likely to be dangerous to such a person in the ordinary course of events, all of which is known to the defendant and not to the injured person and not obviously dangerous in itself; and there is no warning of the danger given; that the injured person responded to that attraction and went to the place by reason of it and was injured there by pursuing a course of conduct which was to be anticipated in the ordinary course of events. Republic Steel Corp. v. Tillery, 261 Ala. 34, 72 So.2d 719."

Later, in Earnest v. Regent Pool, Inc., 288 Ala. 63, 257 So.2d 313, where a nine-year-old boy lost his life, this court said: "It is well settled in Alabama that where the danger from the instrumentality which caused the injury is patent and obvious the doctrine of attractive nuisance is inapplicable." Nine cases are cited in support of that principle.

Here, there is no dispute but that the nine-year-old plaintiff, who was in the fourth grade when the accident happened, was warned repeatedly about the danger, and that the danger was obvious. For cases in other jurisdictions relating to warnings, see Annotation, 16 ALR 3d 126, § 18[b].

In Cox v. Alabama Water Co., 216 Ala. 35, 112 So. 352, the plaintiff took a nonsuit after demurrers were sustained to a complaint for the death of an eight-year-old boy. The judgment was affirmed and in discussing the question of what duty the defendant owed to the boy, and whether an invitation should be inferred on the attractive nuisance theory, this court said:

"The difficulty is to find a reasonable ground on which to predicate the invitation necessary to plaintiff's case. Plaintiff relies upon an implied invitation, for there was none other. But, bearing in mind the principles of decision hereinbefore stated, nothing alleged suffices to justify the implication. The allegation of count D, to quote what is the strongest case to be found in the complaint:

"'Plaintiff avers that the children in great numbers, with great frequency, and for a long period of time had been resorting to said pool, picnicking there, playing there, using said cement run-a-round, using the grounding inside of said fence immediately around said pool, and passing along to and from school by said pool within, to wit, 10 feet thereof, and over the premises same was located upon, all of which facts were known to the agent and servants of the defendant and had been known to them for a long period of time.'

"It is not to be doubted that, under such circumstances, defendant owed plaintiff the duty to refrain from any act calculated to inflict injury on children—or, for that matter, any one else —on the premises; but, to make defendant responsible for the mere condition of the property, an invitation must be implied. The difficulty with such cases, when decided with reference to principles of law of general observance, has always been to find just and reasonable ground on which to rest the implication of invitation, for it is hard to infer an invitation from trespasses which have only the merit of repetition, and this court has said on good authority that neither sufferance, nor permission, nor passive acquiescence is equivalent to an invitation. Atlantic Coast Line v. Carter, 214 Ala. 252, 107 So. 218."

Fowler, the owner of the trailer, parked it in a place in the parking lot authorized by the landlord. He told Teresa not to play on it because she might get hurt and threatened to take her to her parents. Teresa was also warned not to play on it by her father, the maid, and just a few minutes before she got hurt, by the resident manager of the apartments. Teresa knew that the trailer could be rocked as a seesaw by children such as she; and it was patent and obvious that the risk of falling was greater when it was moving than when it was stationary.

Two elements, latent or concealed danger, and absence of warning, which our cases have required, along with others, to come within the theory of attractive nuisance are not present in the instant case and in their absence, plaintiff could not make out a case under that theory.

In Cox v. Alabama Water Co., 216 Ala. 35, 112 So. 352, this court concluded the opinion with this statement:

"We trust we are as much inclined to give heed to the 'yearnings of humanity' as a court in which justice is adminis-

tered according to law ought to be; but established rules of law, departed from in some cases, we concede—the intolerable burden a contrary rule would place upon the ownership of property, and the general drift of the courts away from an extension of the rule of the attractive nuisance cases—these considerations induce us to hold that the demurrer to appellant's complaint in this case was properly sustained."

This court has exhibited reluctance in extending the attractive nuisance doctrine to situations other than a turntable case, Alabama Great Southern R. R. Co. v. Crocker, 131 Ala. 584, 31 So. 561; dynamite caps, Bryan v. Stewart, 194 Ala. 353, 70 So. 123, and Williams v. Bolding, 220 Ala. 328, 124 So. 892; unprotected or unguarded machinery when a three-year-old child lost an arm, Clover Creamery Co. v. Diehl, 183 Ala. 429, 63 So. 196, and a transmission tower with high voltage reinsulated lines attached, Alabama Power Co. v. Kirkpatrick, 268 Ala. 338, 105 So.2d 855. That reluctance has been expressed in many of our cases, including the recent cases, Mullins v. Pannell, 289 Ala. 252, 266 So.2d 862; Alabama Great Southern R. R. Co. v. Green, 276 Ala. 120, 159 So.2d 823; Alabama Power Co. v. Kirkpatrick, 268 Ala. 338, 105 So.2d 855.

Trailers of every type are commonplace today and many yards and parking lots contain boat trailers similar to the one involved here. We do not think the doctrine of attractive nuisance should be extended to them when the circumstances are similar to those in the instant case.

Appellant cites cases which substantially follow or have adopted the rule announced by The Restatement of Torts 2nd, § 339. This court stated the rule in Earnest v. Regent Pool, Inc., 288 Ala. 63, 257 So.2d 313, and rejected it, saying:

"Were we to adopt the rule stated in § 339, supra, we would in effect overrule well settled decisions of long standing which hold. that where the doctrine of attractive nuisance is not applicable because the danger is patent and obvious to a trespassing child, no exception will be made to the conventional rule in his case. Since our cases do not support the application of the rule of law announced in § 339 of The Restatement of Torts, we are unwilling to apply it and thus establish a different concept of duty owing from landowners to trespassing children from that now existing in this state. * * *"

The ruling of the trial court was not erroneous.

Affirmed.

HEFLIN, C. J., and HARWOOD, MADDOX and FAULKNER, JJ., concur.