309 So.2d 818

Mary B. **FOLMAR**

v.

**MONTGOMERY FAIR COMPANY, INC., a corporation, and Gayfer's Montgomery Fair Company, a corporation.**

**SC 737.**

Supreme Court of Alabama.

Feb. 13, 1975.

Rehearing Denied March 6, 1975.

Thomas S. Lawson, Jr., Montgomery, for appellant.

John M. Milling, Jr., and William I. Hill, II, Montgomery, for appellees.

**688**

ON REHEARING

FAULKNER, Justice.

The plaintiff, Mrs. Mary Folmar, "tripped" while walking between display tables in the china department of the Montgomery Fair department store. She allegedly sustained a broken hip and shoulder from the ensuing fall and sued the store for negligence, demanding judgment in the amount of $85,000. A demurrer was sustained to the complaint, hereupon the plaintiff amended her complaint. The store then moved for summary judgment. The moving papers consisted of the pleadings, an affidavit of one store employee, and the deposition of Mrs. Folmar herself. The plaintiff opposed the motion by submitting a deposition from the same store employee, an affidavit from Mrs. Folmar, and one from her daughter, who had accompanied her to the store on the day of the incident. Montgomery Fair's motion was nonetheless granted and the suit was dismissed. This appeal followed.

The only pertinent issue on appeal is whether the trial judge acted correctly in granting the defendant's motion for summary judgment. The store's principal contention throughout has been since there is no evidence as to the exact cause of the plaintiff's fall, there can be no basis for a finding of negligence of any kind. In other words, was there insufficient evidence to create a jury question as to the cause of the plaintiff's fall. Most of the doubt stems from the statements made by Mrs. Folmar while being deposed:

"Q. All right. Tell me how it happened that you fell there in the Montgomery Fair store.

"A. Well, I walked in the store and Fran stopped to register her silver. And I walked on up through the China Department, and Fran came on and joined me. And she said come let me show you the china pattern that I picked out. And I walked past these round tables, and there were some shelves up at the top of the round tables with some dishes on them. And a couple, a man and a lady came, and they stopped to look at those dishes. And it blocked my going through, and I waited a while for them to move on to let me through and they didn't. So I turned around and walked between the tables to go to Fran. And as I was walking between the tables I tripped on something and just fell at an angle.

"Q. What did you trip on, Mrs. Folmar?

"A. I don't know.

\* \* \* \* \* \*

"Q. At the time you fell were you going between some small tables that were stacked up quite high with china that was on sale?

"A. Yes.

"Q. And when you say you turned to go between those tables, are you referring to some small tables that had china on sale stacked up on top there?

"A. Yes.

"Q. All right. Now, if your foot tripped on anything, would it be fair to state that it was something in the aisle between those tables?

"A. I would think so.

"Q. Now, did you see anything in the aisle between those tables?

"A. No.

"Q. Did you feel any portion of your body come into contact with any of those tables themselves as you walked between them?

"A. I might have. Something made me fall.

"Q. But you don't know what it was?

"A. No.

\* \* \* \* \* \*

"Q. Yes, ma'am. Now, Mrs. Folmar, in your lawsuit that you filed against the Montgomery Fair you have charged them with negligently causing you to be injured. What do you say they did that caused you to be injured?

"A. Well, I say that I fell—I tripped on something and fell.

"Q. And that is as specific as you can be?

"A. Yes.

"Q. You don't know what it was or how it happened, but basically you are saying you went in there uninjured and came out injured?

"A. Yes, I surely did.

"Q. And for that reason you charge them with negligence?

"A. Yes."

In consonance with this question, the affidavit submitted by Mrs. Folmar in opposition to the motion for summary judgment reads as follows:

" 'My name is Mary B. Folmar. I am the Plaintiff in Civil Action No. 30576. At the time I gave my deposition on September 23, 1973 [sic, 1972], I had not returned to the Montgomery Fair since the accident. Since then I have gone back and have seen the tables which appear to me to be the ones I was passing between at the time I tripped. These tables were covered with a long table cloth at that time and I did not notice the legs of the tables. I have since noticed that some of these round tables have legs which angle out from the bottom of the table to the floor so that the legs extend out beyond the edge of the table. If there was nothing else on the floor between the tables or under the long table cloths to trip me when I passed between them—and I did trip on something—it could only have been the leg of the table. The pictures which I have initialled [sic] and are attached to this show the tables and how the legs stick out into the aisle beyond the top of the tables.' "

Appended to this affidavit as exhibits were some photographs of round tables located in the store. Some of these pictures show tables with flared legs protruding beyond the top of the table.

On appeal from summary judgment, the appellate court looks at the same factors which the court below considered in ruling on the motion. 10 Wright & Miller, Federal Practice and Procedure, § 2716, p. 430 (1973). It is also axiomatic that all reasonable inferences from the facts be viewed most favorably to the non-moving party. United States v. Diebold, Inc., 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). After reviewing all of the affidavits, depositions, pleadings and exhibits we are unable to conclude that there was no material issue remaining for trial. Mrs. Folmar's pictures show tables currently in the china department. At the time of the accident, the tables she walked among were draped with long cloths and she did not notice the legs. The store superintendent, Roland Peavy, checked the area immediately after her fall and found no foreign object or matter there. There is no dispute about this fact. Mrs. Folmar states, " . . . If there was nothing else on the floor between the tables or under the long cloths to trip me when I passed between them— and I did trip on something—it could only have been the leg of the table." Mr. Peavy on deposition stated that no new tables or chairs have been purchased for the china department since the accident, and that the furnishings there are basically the same as they were on that day. In light of this, we feel a jury could readily infer that Mrs. Folmar tripped over one of these protruding legs. The store has offered no possible explanation in the alternative; granted, of course, it is not required to do so to succeed here. But the fact that an ultimate jury verdict in the plaintiff's favor might involve some speculation or conjecture as to what caused her fall is not dispositive of this case. There is nothing wrong with a case built around sufficient circumstantial evidence, provided the circumstances are proved and not merely presumed. Richards v. Eaves, 273 Ala. 120, 135 So.2d 384 (1961). Any judgment in such a case must necessarily involve some amount of speculation or inference by the jury. There is conjecture only where there are two or more plausible explanations of causation, and the evidence does not logically point to one any more than the other. Where the evidence does logically point in one direction more than another, then a jury can reasonably infer that things occurred in that way. This generally comports with the plaintiff's urged reading of the cases of Southern Ry. v. Dickson, 211 Ala. 481, 100 So. 665 (1924) and Griffin Lumber Co. v. Harper, 247 Ala. 616, 25 So.2d 505 (1946). All are agreed that Mrs. Folmar fell in the store, that there was nothing else on the floor, that she fell between tables in the china department, some of these tables have protruding legs, and that no furniture has been added or deleted since the accident. Add to this the plaintiff's staunch contention that she tripped over "something" and it is hard to see how a possible finding in her favor can be conjecture. The store has never contended that she did not trip as stated, but only that she did not know exactly what she tripped over. However, her later affidavit exudes more certainty of a kind. She says, " . . . it could have only been the leg of the table."

A plethora of federal cases say that the party moving for summary judgment must clearly establish that the other party could not recover under "any discernible circumstances." Rotermund v. United States Steel Corp., 474 F.2d 1139 (8th Cir., 1973); Nyhus v. Travel Management Corp., 151 U.S.App.D.C. 269, 466 F.2d 440 (1972); Phoenix Savings and Loan, Inc. v. Aetna Casualty and Surety Co., 381 F.2d 245 (4th Cir., 1967). The moving papers of the defendant simply do not do that. There is certainly a possibility of a jury verdict for the plaintiff as the record stands now.

"(T)he record must negate the probability that evidence calling for a contrary result might be developed at the trial. If the pleadings, affidavits, and depositions available when the motion for summary judgment must be ruled on fail to resolve any relevant issue, summary

judgment is premature." Beech v. United States of America, 345 F.2d 872 (5th Cir., 1965).

The defendant has not precluded the possibility, *as a matter of law,* that the plaintiff might not prove her case. The fact that she is perhaps unlikely to prevail at trial is not a standard to be applied. Jobson v. Henne, 355 F.2d 129 (2d Cir., 1966); National Screen Service Corp. v. Poster Exchange, Inc., 305 F.2d 647 (5th Cir., 1962). The judge need not believe the opposing party's evidence in order to deny summary judgment. Nor must he feel that a jury would necessarily believe it. Sartor v. Arkansas Natural Gas Corp., 321 U.S. 620, 64 S.Ct. 724, 88 L.Ed. 967 (1944). The moving party is trying to show that there is no way whatsoever the other party could recover. Thus summary judgment can only be proper "where it is clear what the truth is." Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 82 S.Ct. 486, 7 L. Ed.2d 458 (1962). This is obviously another way of saying that there must not be a genuine issue as to any material fact. It is fairly obvious in this case that it is not yet clear "what the truth is." Did Mrs. Folmar trip over protruding legs of display tables or did she not?

The federal courts have followed a general rule which frowns upon the granting of summary judgments in negligence cases. This is due to the supposed superior competence of a jury in applying a standard of reasonableness to a certain set of facts. Experience has borne out the fact that negligence actions almost always present some unresolved questions of fact.

"Because of the peculiarly elusive nature of the term 'negligence' and the necessity that the trier of facts pass upon the reasonableness of the conduct in all the circumstances in determining whether it constitutes negligence, it is the rare personal injury case which can be disposed of by summary judgment, even where the historical facts are concededly undisputed." Gauck v. Meleski, 346 F.2d 433, 437 (5th Cir., 1965).

See also Committee Comments to Rule 56, Alabama Rules of Civil Procedure; 10 Wright & Miller, Federal Practice and Procedure, § 2729, pp. 559–582 (1973). We have no quarrel with this general proposition, but feel it does not apply in this particular case. We would not be so doctrinaire as to say that summary judgment is never proper in such a situation. However, a reading of the cases footnoted in the Wright & Miller text indicates that those cases in which summary judgment was granted had some other element not present here (10 Wright & Miller, supra, nn. 76–80), i.e. the plaintiff has perhaps failed to prove an essential agency relationship, or that he is within a class protected by a statute he relies on, or he has sued the wrong party, or has somehow waived a right to recovery, and so on. The instant case does not fit any of these categories or any analogous to them. Why then should it be an exception to the rule?

■ When all of the evidence is considered in a light most favorable to the plaintiff, and her necessary inferences are assumed true, it is obvious that reasonable men might reach different conclusions as to the cause of Mrs. Folmar's fall and subsequent injury. If this is so, then the cases indicate that summary judgment can not be granted. United States of America v. Perry, 431 F.2d 1020 (9th Cir., 1970); Cole v. Chevron Chemical Co., 427 F.2d 390 (5th Cir., 1970). In this jurisdiction we must also consider the effects of the scintilla rule on a summary judgment. If the plaintiff has produced a scintilla of evidence on the issue of the defendant's negligence, then summary judgment will not lie. We fully understand that in order to find for the plaintiff, a jury would first have to infer that one of the table legs caused her to fall, and from that determine that some negligence existed. The probability that this might or might nor occur is

not important for the purposes of this review. The plaintiff might escape summary judgment and still suffer defeat via directed verdict. However, that would be at a time subsequent to the presentation of all the evidence. Also at that point the trial judge is permitted some feelings about whether the jury will believe the plaintiff's evidence. We would think that in order to grant summary judgment, the trial judge, in using a directed verdict standard, must feel that regardless of what evidence the opposing party might present at trial, he would nonetheless have to direct a verdict. That is a grave decision to make prospectively, and our review of such a decision should be equally as stringent. In light of what has been said, we conclude the trial judge erred in his conclusion.

Application for rehearing granted; original opinion withdrawn; reversed and remanded.

BLOODWORTH, JONES, ALMON and SHORES, JJ., concur.

HEFLIN, C. J., and MERRILL, MADDOX and EMBRY, JJ., dissent.

HEFLIN, Chief Justice (dissenting):

I agree, basically, with the opinion of Justice Maddox in this cause, but feel that the circumstantial evidence was sufficient to make a jury question as to what Mrs. Folmar tripped over. However, I do not believe that there is a scintilla of evidence pertaining to negligence. The facts of this case do not qualify to come within the purview of First National Bank of Mobile v. Ambrose, 270 Ala. 371, 119 So.2d 18 (1960).

MADDOX, Justice (dissenting).

Although I can admit that this is a close case, I believe the trial court was correct in granting summary judgment in *this particular case.*

This is a negligence action and I realize that, as a general proposition, issues of negligence are ordinarily not susceptible to summary adjudication. See Committee Comments, ARCP, Rule 56. Nevertheless, a motion for summary judgment may be granted, even in a negligence action, when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show two things: (1) that there is no genuine issue as to any material fact, and (2) that the moving party is entitled to a judgment as a matter of law. Rule 56(c) Alabama Rules of Civil Procedure; Birmingham Television Corp. v. Water Works, 292 Ala. 147, 290 So.2d 636 (1974).

What was presented? The evidence submitted on the motion for summary judgment and the evidence presented in opposition to it shows that the plaintiff did not know what caused her to fall in defendant's store. She testified, on deposition, as follows:

"Q. All right. Tell me how it happened that you fell there in the Montgomery Fair store.

"A. Well, I walked in the store and Fran stopped to register her silver. And I walked on up through the China Department, and Fran came on and joined me. And she said come let me show you the china pattern that I picked out. And I walked past these round tables, and there were some shelves up at the top of the round tables with some dishes on them. And a couple, a man and a lady came, and they stopped to look at those dishes. And it blocked my going through, and I waited a while for them to move on to let me through and they didn't. So I turned around and walked between the tables to go to Fran. And as I was walking between the tables I tripped on something and just fell at an angle.

"Q. What did you trip on, Mrs. Folmar?

"A. I don't know.

"Q. Did you see anything?

"A. No.

"Q. Did you see anything at any time on the floor, either before or after you fell?

"A. The minute I fell I was just in excruciating pain, it broke my shoulder, and my hip.

"Q. Did you feel anything touch any portion of your body, either your foot or your leg or your knee or any portion of your body as you walked between the tables?

"A. Well, if *anything it was my foot.* [Emphasis added.]

\*    \*    \*    \*    \*    \*

"Q. At the time you fell were you going between some small tables that were stacked up quite high with china that was on sale?

"A. Yes.

"Q. And when you say you turned to go between those tables, are you referring to some small tables that had china on sale stacked up on top there?

"A. Yes.

"Q. All right. Now, if your foot tripped on anything, would it be fair to state that it was *something in the aisle between those tables?*

"A. *I would think so.*

"Q. Now, did you see anything in the aisle between those tables?

"A. No.

"Q. Did you feel any portion of your body come into contact with any of those tables themselves as you walked between them?

"A. *I might have. Something made be fall.*

"Q. But you don't know what it was?

"A. No.

[Emphasis added.]

\*    \*    \*    \*    \*    \*

"Q. Yes, ma'am. Now, Mrs. Folmar, in your lawsuit that you filed against the Montgomery Fair *you have charged* them with negligently causing you to be injured. What do you say they did that caused you to be injured?

"A. Well, I say that I fell — I tripped on something and fell.

"Q. *And that is as specific as you can be?*

"A. *Yes.*

"Q. You don't know what it was or how it happened, but basically you are saying you went in there uninjured and came out injured?

"A. Yes, I surely did.

"Q. And for that reason you charge them with negligence?

"A. Yes."

[Emphasis added.]

Viewing the evidence most favorably to Mrs. Folmar, as this Court is required to do, I find that these facts are presented:

1. Mrs. Folmar tripped on *something* and fell in the department store.

2. She fell while attempting to pass between tables which were covered with table cloths and ladened with china.

3. She did not know what caused her to trip.

4. The aisle where she fell contained no foreign objects or substances.

Mrs. Folmar filed a supplementary affidavit, on September 7, 1973, which read as follows:

" 'My name is Mary B. Folmar. I am the plaintiff in Civil Action No. 30576.

At the time I gave my deposition on September 23, 1973 [sic, 1972], I had not returned to the Montgomery Fair since the accident. Since then I have gone back and have seen the tables which appear to me to be the ones I was passing between at the time I tripped. These tables were covered with a long table cloth at that time and I did not notice the legs of the tables. I have since noticed that some of these round tables have legs which angle out from the bottom of the table to the floor so that the legs extend out beyond the edge of the table. If there was nothing else on the floor between the tables or under the long table cloths to trip me when I passed between them—and I did trip on something—it could only have been the leg of the table. The pictures which I have initialled [sic] and are attached to this show the tables and how the legs stick out into the aisle beyond the top of the tables.' "

Mrs. Folmar also filed three photographs as exhibits to her affidavit. The photographs were of round tables, some of which had flared legs that extended beyond the edge of the table itself. The other tables had straight legs.

Plaintiff Folmar contends that the evidence shows that she tripped on something which made her fall as she was walking between the tables; that it would be fair to state it was something in the aisle between the tables; that in view of the type of table involved, and in view of the store employee's statement that nothing else was on the floor, it can logically and reasonably be inferred that she tripped on the table leg. Plaintiff's counsel argues that since she did trip on something when she passed between the tables, and if there was nothing else on the floor or under the long table cloth to trip her, "then it could only have been the legs of the table on which she tripped." I disagree.

Plaintiff Folmar relies on First National Bank of Mobile v. Ambrose, 270 Ala. 371, 119 So.2d 18 (1960). In *Ambrose,* plaintiff tripped over a metal cigarette disposal stand which had flared legs. The plaintiff there knew what *caused* her to trip. The trial court denied, in *Ambrose,* the defendant's request for an affirmative charge, and a jury verdict was rendered for the plaintiff. This Court affirmed the trial court's judgment in refusing the affirmative charge in that case, but the facts and circumstances presented in that case are materially different, especially the evidence of causation.

Summary judgment in a negligence action is sometimes appropriate. See Herbert v. Regency Apartments, 292 Ala. 417 295 So.2d 404 (1974). Previously, this Court, applying the scintilla evidence rule, has also found that a negligence action can be taken from a jury, if a jury verdict could only be based upon pure speculation and conjecture. Colonial Life and Accident Insurance Co. v. Collins, 280 Ala. 373, 194 So.2d 532 (1967); McDowell and McDowell, Inc. v. Barnett, 277 Ala. 302, 169 So.2d 324 (1964); Southern Ry. v. Woodstock Mills, 230 Ala. 494, 161 So. 519 (1935); Continental Casualty Co. v. Paul, 209 Ala. 166, 95 So. 814 (1923); St. Louis & S.F. RR. v. Dorman, 205 Ala. 609, 89 So. 70 (1921). It is axiomatic that the mere happening of an accident raises no presumption of negligence.

In Griffin Lumber Co. v. Harper, 247 Ala. 616, 25 So.2d 505 (1946), this Court reversed the trial court for refusing to give the affirmative charge requested by the defendants in that case. In *Griffin Lumber,* this Court followed the rule as laid down in the case of Southern Ry. v. Dickson, 211 Ala. 481, 100 So. 665, 669 (1924), as follows:

" 'Proof which goes no further than to show an injury could have occurred in an alleged way, does not warrant the conclusion that it did so occur, where from the same proof the injury can with equal probability be attributed to some other cause.'

"But a nice discrimination must be exercised in the application of this princi-

ple. As a theory of causation, a conjecture is *simply* an explanation consistent with known facts or conditions, but not deducible from them as a reasonable inference. There may be two or more plausible explanations as to how an event happened or what produced it; yet, if the evidence is without selective application to any one of them, they remain conjectures only. On the other hand, if there is evidence which points to any one theory of causation, indicating a logical sequence of cause and effect, then there is a judicial basis for such a determination, notwithstanding the existence of other plausible theories with or without support in the evidence."

The fact that stands out in my mind is this. Plaintiff has not shown, by direct or circumstantial evidence, what caused her to trip. If *she* cannot show what caused her fall, how can a jury make such a finding? I do not think it can. Plaintiff says that she has shown that there were tables covered with table cloths which hid the legs from view. Some of the tables had straight legs. Some had flared legs. The pictures submitted with the affidavit do not show that these tables are unusual tables. They appear to be standard tables to me.

I cannot bring myself to the conclusion that the proof points to plaintiff's theory of causation, indicating a logical sequence of cause and effect. The proof here requires an inference that the "something" causing plaintiff to trip was a table leg (since plaintiff says that the leg was covered, we also have to infer it was, in fact, a table leg). If we infer that it was a table leg, we have to infer it was a flared table leg. That requires the type of speculation and conjecture which this Court said a jury verdict cannot be based upon in McClinton v. McClinton, 258 Ala. 542, 63 So. 2d 594 (1953).

I also fail to see how it could be negligent to display items of merchandise on tables like those we have pictures of in this case. The facts of this case are distinguishable from First National Bank v. Ambrose, 270 Ala. 371, 119 So.2d 18 (1960), a case relied on heavily by plaintiff.

The majority and I do not disagree on the rule that summary judgment is rarely appropriate in a negligence case. I thoroughly agree with that general principle of law. See my original opinion in Ray and Plough v. Midfield Park, 293 Ala. 609, 308 So.2d 686 (1974), and my special concurrence in Watwood v. Dawson Bridge Co., 293 Ala. 578, 307 So.2d 692 (1975). I thought summary judgment was inappropriate in both those cases because the movant in both cases had not eliminated every genuine issue of a material fact. I do think summary judgment was appropriate here, however, as I have attempted to show.