Gary and Susan Guthrie brought this action individually and on behalf of their minor daughter, Andrea, against Bio-Medical Laboratories, Inc., Baptist Medical Centers, People's Hospital, Walker County Medical Center, Dr. William D. Birdsong, Dr. Edgar Allen O'Rear, Jr., Dr. Robert Elbert Ray, Dr. Gaines Keith, and Dr. David Wirtschafter. The trial court granted a summary judgment in favor of Bio-Medical and made it final in accordance with ARCP 54 (b). It then ordered a severance of the action against Doctors Birdsong, Ray, and O'Rear from the action against the remainder of the defendants. Since Birdsong, Ray, and O'Rear are residents of Walker County, the court then transferred the severed action to the Circuit Court of Walker County. The plaintiffs appealed from the summary judgment and petitioned for a writ of mandamus ordering the trial court to vacate its order severing and transferring the action against Birdsong, Ray, and O'Rear.
The complaint alleged that on or about April 2, 1974, Dr. Keith withdrew a specimen of Mrs. Guthrie's blood and sent it to Bio-Medical Laboratories for a prenatal analysis. Bio-Medical reported that Mrs. Guthrie's blood type was A-positive when, in fact, it was A-negative. When Mrs. Guthrie subsequently became pregnant, an Rh incompatability occurred between Mrs. Guthrie and her unborn child. Andrea was born on September 30, 1978, with brain damage allegedly attributable to the Rh incompatability. The plaintiffs claimed that if Bio-Medical had accurately typed Mrs. Guthrie's blood her physician could have taken steps before she became pregnant to prevent the incompatability.
Doctors Birdsong, Ray, and O'Rear treated Mrs. Guthrie after she became pregnant. *Page 94 
They performed their own blood testing and presumably were aware of the Rh incompatability. They were unaware of, and in no way relied on, Bio-Medical's test. The plaintiffs alleged that Birdsong, Ray, and O'Rear failed to timely and properly treat Andrea and that, as a proximate result, she suffered the injuries complained of.
 SUMMARY JUDGMENT
As grounds for its motion Bio-Medical argued that the complaint failed to state a claim against it and that the statute of limitations had expired. In support of its motion, it filed an affidavit by an immunohematology supervisor who was employed by the defendant on the date in question. The affidavit states, inter alia, that:
 "As a part of my duties and responsibilities with Biomedical Reference Laboratories, Inc., I did perform routine grouping and typing of blood for specimens submitted to Biomedical Reference Laboratories for analysis. From the account number and specimen number shown on the report of Susan Guthrie dated April 4, 1974, it is determined that the laboratory analysis was performed in Burlington, North Carolina.
 "The specimen which was analyzed was taken and labeled by Dr. Woodrow Gaines Keith of Carbon Hill, Alabama prior to being submitted to Biomedical Reference Laboratories, Inc. for testing.
 "The procedures which I followed in routine grouping and typing of blood were those recommended by the American Association of Blood Banks.
 "All reagents were tested daily using known positive and negative controls.
 "At this time, the auto-typer (Technicon) was used daily to run all specimens.
 "All Rh negative specimens were pulled and further testing was done to conclude the results as being positive or negative. Results were then recorded on a computer printout sheet and entered into the computer to be sent to the doctor and/or laboratory that requested the tests.
 "This procedure was followed uniformly with respect to all specimens submitted for analysis including that of Susan Guthrie.
 "Biomedical Reference Laboratories, Inc. in Burlington, North Carolina has been accredited by the College of American Pathologists since January of 1973, and is presently accredited."
In response to Bio-Medical's affidavit, the plaintiffs filed an affidavit by a physician who is the supervisor of another laboratory which does blood typing; that affidavit stated,inter alia:
 "If, on April 4, 1974, standard, accepted, and routine procedures concerning the labeling, handling, grouping, typing, and reporting of a blood specimen had been followed by a laboratory, the determination of whether a specific blood sample was Rh negative could have been accurately made and reported.
 "If, on April 4, 1974, a laboratory determined or reported that a specific blood sample was Rh positive, when in fact the specific blood sample was Rh negative, that laboratory failed to either possess or use that degree of care, skill, and diligence ordinarily possessed and used by laboratories."
Summary judgments are rarely appropriate in negligence actions. Folmar v. Montgomery Fair Co., 293 Ala. 686, 691,309 So.2d 818, 822 (1975). Extreme caution is especially appropriate when reviewing cases such as the one at bar where a summary judgment was granted before full discovery was completed by the parties.
This case bears a great similarity to, and is governed by, our opinion in Scott v. Mendoza, 428 So.2d 8 (Ala. 1982) InScott, the defendant, a physician who had treated the plaintiff, alleged by affidavit that he had exercised the standard of care required of him under the circumstances. An affidavit filed on behalf of the plaintiff by a physician treating him subsequently stated that, in the opinion of the affiant, the injuries complained of could have had any one of three causes. Even though only one of *Page 95 
the three possible causes enumerated in the affidavit was attributable to the defendant, we ruled that the possibility that the defendant was responsible was sufficient to raise an issue of fact.
Similarly, in the case at bar, the defendant's affidavit alleged that in this case, as in all others, it exercised due care in typing the blood. The plaintiffs' expert's affidavit to the effect that the incorrect typing could have been the result of the failure of Bio-Medical to either possess or use the degree of care ordinarily possessed by laboratories which perform blood typing was sufficient to raise a question of fact. We recognize the possibility that the error may have been attributable to the person or persons who handled the specimen before it reached Bio-Medical. Such questions of fact are not, however, appropriate for resolution by summary judgment. Scott, supra at 11.
The defendant also raised the statute of limitations as a defense. The Alabama Medical Liability Act provides:
 "(a) All actions against physicians, surgeons, dentists, medical institutions or other health care providers for liability, error, mistake or failure to cure, whether based on contract or tort, must be commenced within two years next after the act or omission or failure giving rise to the claim, and not afterwards; provided, that if the cause of action is not discovered and could not reasonably have been discovered within such period, then the action may be commenced within six months from the date of such discovery or the date of discovery of facts which would reasonably lead to such discovery, whichever is earlier; provided further, that in no event may the action be commenced more than four years after such act; except, that an error, mistake, act, omission or failure to cure giving rise to a claim which occurred before September 23, 1975, shall not in any event be barred until the expiration of one year from such date.
 "(b) Subsection (a) of this section shall be subject to all existing provisions of law relating to the computation of statutory periods of limitation for the commencement of actions, namely, sections 6-2-1, 6-2-2, 6-2-3, 6-2-5, 6-2-6, 6-2-8, 6-2-9, 6-2-10, 6-2-13, 6-2-15, 6-2-16, 6-2-17, 6-2-30 and 6-2-39; provided, that notwithstanding any provisions of such sections, no action shall be commenced more than four years after the act, omission or failure complained of; except, that in the case of a minor under four years of age, such minor shall have until his eighth birthday to commence such action."
Section 6-5-482, Code of Alabama (1975).
Since the test in question was performed on or about April 6, 1974, Bio-Medical argued that any actions based on the testing would have to have been filed by April 6, 1978, to have been timely. Plaintiffs' action was not filed until November 5, 1979.
We disagree with the defendants' assumption that the statute began to run in 1974. In order to accord constitutional validity to the statute, we ruled in Ramey v. Guyton,394 So.2d 2 (Ala. 1981), that the prescriptive period cannot begin to run until a cause of action "accrues," to-wit, when the act complained of results in injury to the plaintiff. Since the injuries to Andrea occurred within two years of filing suit, the action was timely. Under any interpretation of the act, the action brought on behalf of Andrea was timely because it was filed before her eighth birthday. Section 6-5-482 (b), Code of Alabama (1975).
 SEVERANCE
In its order severing the action against Doctors Birdsong, Ray, and O'Rear, the trial court stated, inter alia:
 "Because the undisputed affidavit testimony has established that each of said defendant physicians was not aware of the existence of the [Bio-Medical] report, any cause of action which plaintiffs would have against these defendants based on treatment of Andrea Guthrie is separate and apart from any cause of action which plaintiffs might have against defendant Bio-Medical Laboratories, *Page 96 
Inc. based on negligence alleged to have occurred before Andrea Guthrie was conceived. Because the claims of the plaintiffs against defendants Ray, Birdsong, and O'Rear are not properly joined with plaintiffs' claims against defendant Bio-Medical Laboratories, Inc., and the Court, pursuant to its authority under Rule 21 ARCP does hereby sever plaintiffs' claims against defendants Ray, Birdsong, and O'Rear from the plaintiffs' claims against all other defendants."
Rule 21 provides the mechanism for dropping or adding parties in instances of misjoinder or non-joinder. The rule should be read in conjunction with Rules 18, 19, and 20, since it contains no standards governing its operation, but is invoked when one of the other rules has been violated. See Pan AmericanWorld Airways v. United States District Court, C.D., Cal.,523 F.2d 1073, 1079 (9th Cir. 1975); United States v. CommercialBank of North America, 31 F.R.D. 133, 135 (S.D.N.Y. 1962).
A.R.C.P. 20 provides that it is permissible to join defendants if: (1) the plaintiff(s) asserted any right to relief against the defendants, either jointly, severally, or in the alternative; (2) the claims were asserted in respect of, or arising out of, the same transaction, occurrence, or series of transactions or occurrences; and (3) there is any question of law or fact common to all defendants.
In the case at bar, the plaintiffs were clearly entitled to join the defendants in one action. (1) The complaint alleged that each defendant was negligent and that as a proximate result Andrea suffered brain damage. (2) The claims all arose out of the same series of occurrences, to-wit, Andrea's conception, gestation, and birth. (3) There was but a single, indivisible injury to Andrea, which was allegedly caused by the negligence of one or more of the defendants. Therefore, there is a factual issue common to all defendants, the issue of damages.
A.R.C.P. 20 was intended to abolish the technical objections to joinder previously existing, in order to prevent a multiplicity of actions and allow all parties interested in a controversy to proceed in one action. See Committee Comments to Rule 20. Forcing the plaintiffs to pursue two actions for Andrea's injuries would create a risk of incurring inconsistent judgments. Requiring all the parties to proceed in a single action will promote consistency of results as well as judicial economy.
Although factually accurate, the defendants' argument that Bio-Medical's alleged mistyping had no effect on the care and treatment provided by Doctors Birdsong, Ray, and O'Rear is unpersuasive. Nothing in the rules of civil procedure requires the allegedly negligent acts of all the defendants to be so intertwined. It is not essential to allege that the defendants jointly committed a single tort in order for the plaintiff(s) to properly join them in one action. It is sufficient to allege that successive torts concurred in producing the same indivisible injury. Brown v. Murdy, 78 S.D. 367,102 N.W.2d 664, 667 (1960); Shawd v. Donohoe, 97 Ohio App. 252,125 N.E.2d 368, 369 (1954).
The summary judgment in favor of Bio-Medical Laboratories, Inc., is hereby reversed. The petition for writ of mandamus is granted and the trial court is hereby ordered to vacate its order severing and transferring the action against the defendants Birdsong, Ray, and O'Rear. The case is remanded to the trial court.
82-569, REVERSED AND REMANDED; 82-905, WRIT GRANTED.
TORBERT, C.J., and ALMON, EMBRY and ADAMS, JJ., concur. *Page 97