MADDOX, Justice.
This is a medical malpractice case on appeal to this Court from a summary judgment in favor of two defendants, Dr. Billy F. Ponder and Carraway Methodist Medical Center.
The plaintiff’s lawsuit arose out of treatment for a back injury she sustained while employed at O’Neal Steel, Inc. The evidence shows that, when informed of Mitchell’s injury, Francis Joiner, the safety supervisor at O’Neal, instructed the plaintiff to present herself to Dr. Ponder at the Carraway Industrial Clinic for examination and treatment. Dr. Ponder examined the plaintiff some 26 days after her alleged back injury, diagnosed a lumbosacral strain, and released her for return to work, with a prescription for an analgesic and a recommendation of hot soaks and light duty work. The plaintiff returned to work, and later was examined by Dr. Ponder on three subsequent occasions. Dr. Ponder’s records indicate that, on each subsequent visit, the plaintiff showed improvement and that he advised her to continue her therapy. On her last visit, Dr. Ponder released the plaintiff and told her to return only “as needed.” Eight days after her last examination by Dr. Ponder, the plaintiff presented herself for examination by Dr. Timothy Key, an occupational medicine specialist employed by American Cast Iron Pipe Company. Dr. Key’s deposition testimony reflects that the plaintiff’s condition had neither improved nor worsened; he prescribed medication and a back brace, and he, too, returned the plaintiff to work. When she continued to show little or no improvement, Dr. Key referred the plaintiff to a neurosurgeon, who ultimately performed spinal disc surgery on her.
Mitchell brought suit against her employer; Francis Joiner, the safety supervisor; the Home Insurance Company; and the appellees here, Ponder and Carraway. Mitchell’s workmen’s compensation claim against O’Neal, and her negligence claims against Home Insurance Company and Joiner, were settled prior to this appeal; the only claim remaining is the medical malpractice count against Dr. Ponder and Carraway Methodist Medical Center.
The basis of the plaintiff’s medical malpractice suit is her assertion that Dr. Ponder negligently failed to adequately explain her medical condition to her, that he negligently gave permission for her to return to work, and that he negligently failed to detail her work restrictions under his release for “light work.” The plaintiff contends that, as a result of Dr. Ponder’s failure to exercise the proper degree of care, her injuries were aggravated. The plaintiff further contends that a scintilla of evidence exists to show that Dr. Ponder was the *500 employee, agent, or servant of Carraway Methodist Medical Center and that, under the doctrine of respondeat superior, Carra-way is liable for Dr. Ponder’s negligence.
The defendants contend that summary judgment was properly granted in this case for two reasons: (1) that the plaintiff failed to present a scintilla of evidence that Dr. Ponder breached the appropriate standard of care, and (2) that the plaintiff cannot show any injury caused by Dr. Ponder’s allegedly substandard treatment. We disagree with the defendants on both issues, and reverse and remand.
This is a negligence case, and summary judgment is rarely appropriate on negligence claims. Folmar v. Montgomery Fair Co., 293 Ala. 686, 309 So.2d 818 (1975). While medical malpractice cases require a unique quality of proof of the alleged lack of due care, we must conclude that the plaintiff presented at least a scintilla of evidence of breach of duty and of injury, when the evidence is viewed in a light most favorable to the nonmoving party, as the law requires. Tolbert v. Gulsby, 333 So.2d 129 (Ala.1976); Rule 56, Ala.R. Civ.P.
In opposition to the defendants’ summary judgment motion, the plaintiff submitted the affidavit of Dr. Key. In that affidavit, Dr. Key states:
“The patient was seen by Dr. Ponder twenty-six (26) days after the injury occurred. His recommendations regarding therapy were appropriate for the injury at that time, such as moist heat, diathermy, back exercises, and light duty. There is no documentation of what the light duty involved, nor if the company was notified. In my opinion, based on information available from Dr. Ponder’s records concerning the patient, light duty restrictions on February 1, 1985, probably should have consisted of no excessive bending, no excessive stooping, no prolonged standing, and a weight lifting limit that reflected her physical abilities and tolerance at that time. These are general restrictions and can be modified as necessary for each individual. A clear definition of the restrictions and communication with her department would have helped to make a determination of whether she would have been able to continue working in some capacity or whether she would have been taken off the job at that time. Whether this was done is not clear from the notes.
“The standard of care exercised by physicians practicing occupational medicine in the Birmingham, Alabama, [area] in early 1983 would require specific communication of work restrictions to the employee and the employer.”
In support of their motion, the defendants contend that, when Dr. Key’s affidavit and deposition testimony are looked at in their entirety, no genuine issue of material fact remains, and that Dr. Key’s only complaint about Dr. Ponder’s treatment is Ponder’s method of record keeping. The following are excerpts from Dr. Key’s deposition testimony:
“Q. Specifically, in your affidavit you say that you criticized Dr. Ponder for not specifically telling Ms. Mitchell what is meant by the term ‘light duty.’ Is that correct?
“A. Right.
“Q. You do not criticize the care and treatment which he did, indeed, render to her, on the occasion or occasions that he saw Ms. Mitchell?
“A. That’s correct.
“Q. And in your affidavit, you state that light duty should have consisted of no excessive bending. That’s just one of the communications that you allege should have been made by Dr. Ponder to Ms. Mitchell?
“A. Right.
“Q. Tell me doctor: What do you mean by no excessive bending?
“A. By no excessive bending, what I mean is, that bending brings on the discomfort; to the extent that it brings on the discomfort. Some bending could be performed, but whenever it brings— enough to the point where it’s causing the discomfort or the pain that she was having. Then that would be excessive.
“Q. So you’re not saying that Dr. Ponder should have told Ms. Mitchell *501 that she should not try to bend over and touch her knees. Is that correct?
“A. Right.
“Q. You’re saying that she should had [sic] tested, then he would know how much she would have been able to lift and he could have restricted her, accordingly. Which isn’t indicated on the notes.
“Q. Does the standard of care require a physician to indicate that on the medical records?
“A. I guess only in the sense that, if you wanted to go back and based on your medical records, you wanted to find out what you had done. It would be there for your review.
“Q. Sir, you’re telling me that the standard of care would not necessarily require Dr. Ponder to indicate?
“A. To indicate it in the notes, but it should have been communicated to someone.
“Q. So it doesn’t necessarily have to be indicated in the notes?
“A. If he had it somewhere else that’s available to him.
“Q. Could he have communicated it on to the patient and then, at that point in time, indicated in his records no heavy lifting? And then, would Dr. Ponder be within the standard of care?
“A. It would have been better if he had defined how much lifting she could have done.
“Q. Would the standard of care require that he define that in his medical records? That’s all I’m asking you.
“A. If it had been communicated somewhere else, I guess it wouldn’t have to be in the medical records, itself.
“Q. And let me see if I understand your testimony. You háve no criticism, whatsoever, of the actual treatment rendered by Dr. Ponder?
“A. No.
“Q. Have I covered each and every criticism that you have of Dr. Ponder’s treatment of this patient?
“A. Right.
“Q. Do you have any criticism?
“A. No. If he felt that she was able to do that.
“Q. In fact, to the best of your knowledge, you, yourself, allowed her to return to work after the first time you saw her. Is that correct?
“A. Right. Because she had been working.
“Q. ‘Light duty,’ to you, doesn’t mean anything. I believe that’s what you’ve testified to earlier. Is that correct?
“A. It doesn’t have much meaning, at all.
“Q. Not to you. Just because it doesn’t have any meaning to you, does not mean it doesn’t have any meaning to any other physician. Would you assess that to be a fair statement?
“A. That’s a fair statement.
“Q. It’s important that the patient’s treating physician know what the term ‘light duty’ was, if he chose to use that term during his care and treatment of his patient. Isn’t that correct?
“A. What it meant to him. Right.
“Q. And as long as it means something to the treating physician, that’s really all that matters. Isn’t that correct?
“A. Right. As long as he understands what he means.
“Q. And the standard doesn’t require that everybody know what the term ‘light duty’ means. Does it?
“A. I am not aware of the standard that does.
“ * * *
“Q. Did you tell this lady not to go back to work?
“A. According to my notes, I didn’t tell her not to go back to work.
“Q. Did you write any kind of return to work slip for her? That you can recall?
“A. Not that I recall. I would have made a note of it.
“Q. She was already working, I think, when you saw her wasn’t she?
“A. I think she was.
*502 “Q. And you just let her continue on whatever job she was doing at the time, didn’t you?
“A. Right.
“Q. You didn’t restrict her activities, work or otherwise, in any fashion?
“A. No. Other than what restraints she would have from the support.
“Q. Other than from the brace that she had?
“A. Right.
“Q. But other than that, she was free to do whatever she was doing before she came to see you. Correct?
“A. Right.”
While it is true that Dr. Key’s testimony must be examined in its entirety, and judgment not be based on excerpts taken out of context, Hines v. Armbrester, 477 So.2d 302 (Ala.1985), it is clear that factual disputes exist. Although Dr. Key indicates that he cannot dispute the quality of Dr. Ponder’s diagnosis and treatment, he also clearly states in his affidavit that Dr. Ponder breached the standard of care exercised by occupational medicine specialists in Birmingham at that time, by not adequately communicating the plaintiff’s work restrictions to her and to her employer.
For the above stated reasons, we are of the opinion that the summary judgment is due to be, and it hereby is, reversed, and the case remanded for further proceedings.
REVERSED AND REMANDED.
TORBERT, C.J., and ALMON and BEATTY, JJ., concur.
HOUSTON, J., concurs specially.