This appeal is from a summary judgment granted in favor of the plaintiffs in an action to quiet title to certain "Row Crop Land." For the reasons set out below, we reverse
The suit was filed in 1973 by Gilmer P. Phillips, now deceased, and his wife, Inez B. Phillips, against Frank Fountain and his father, J.F. Fountain, seeking to quiet title in certain real estate in Etowah and St. Clair Counties. The defendants' answers and counterclaims averred that they held interests in the real estate by virtue of a series of lease agreements and options to purchase. Both plaintiffs and defendants filed motions for summary judgment. The trial court found that the Fountains, defendants, had no interest in the land and granted summary judgment for the plaintiffs. Because of the complexity of the facts and the inartfulness of the lease and option to purchase agreements, the facts as alleged by each party are set out extensively below
In April 1971, Frank Fountain and the plaintiffs entered into a written lease agreement with a ninety-day grace period for late payment and an option to purchase covering approximately 1,237 acres of "Row Crop Land." At that time, Frank Fountain additionally held a lease-sale contract dated September 1969, covering an additional 140 acres called the "Dairy Land."
In the spring of 1972, Frank experienced financial difficulties and had trouble meeting his payments on the lease It is at this point that the factual controversy begins. In their depositions, defendants Frank and J.F. Fountain contend that an oral agreement was made, under which it was agreed that J.F. Fountain would take over payment of Frank's lease and option agreement with the plaintiffs. Gilmer Phillips, however, testified in his deposition that the April 1971 Lease-Option Agreement was in default in excess of the ninety-day grace period and that he sent Frank Fountain a letter informing him of that fact. He further testified that Frank Fountain gave him checks on several occasions that "bounced," and contends that at no time did he orally agree for J.F. Fountain to assume payment of the rent for Frank Fountain *Page 616 
Defendants, in turn, contend that no letter from Gilmer Phillips was ever received by them to inform them of default, and state that all rental payments to Phillips were paid when due
On July 29, 1972, in a handwritten lease on "Phillips Cattle Farm" stationery, J.F. Fountain and Gilmer Phillips agreed that J.F. Fountain would pay $2,000 for "all crops on land rented by Frank Fountain, as per contract due 1972." In addition, J.F Fountain agreed to rent this same land for the coming year, 1973, for $4,620, to be paid in two equal installments due January 1 and July 1, 1973. This contract also included a rental agreement for the 140 acres of "Dairy Land" to begin on January 1, 1973. The defendants contend that at this time an option to purchase was also contracted for, the possession of which written contract remained with Gilmer Phillips and is not now to be found. Phillips, however, contends that no option to purchase ever existed between J.F. Fountain and the plaintiffs in connection with the July 1972 lease. Phillips further contends that J.F. Fountain altered the contract by adding a ninety-day grace period after the contract had been signed
In the fall of 1973, Gilmer Phillips told J.F. Fountain that the plaintiffs had rented eighty acres of the "Dairy Land" to a Mr. Riddle for $800. Plaintiffs contend that this was done with the approval and consent of J.F. Fountain at a time when his rental agreement was not in default. Phillips states that J.F Fountain requested that the plaintiffs rent whatever part of the "Dairy Land" they could, since he could not use it all One-half of the rent would then be applied to the one-year lease. J.F. Fountain, however, testified in his deposition that a disagreement arose as a result of the plaintiffs' renting this land to Mr. Riddle, and that after some debate the parties decided to put into writing an instrument containing the option to purchase (1,377 acres: 1,237 acres of "Row Crop Land," plus 140 acres of "Dairy Land") and the rent reduction agreement Though all of this was denied by Gilmer Phillips, a handwritten, initialed copy of this agreement was introduced as evidence in the trial court
J.F. Fountain further testified that he became concerned about the option to purchase that he claims was executed in July 1972 and subsequently lost. Mr. Fountain stated that the plaintiffs, after some discussion, told him to come to their house and that they would have a new option to purchase already written out. He further testified that upon arrival at the Phillipses' home, they presented him with an old typed agreement which they subsequently modified. Again, the plaintiffs deny that they ever signed such an agreement, but a copy of the disputed contract, partially typed and partially handwritten, was introduced as evidence in the trial court
In January 1973, J.F. Fountain timely delivered a check to Gilmer Phillips for the January 1973 rental payment Gilmer Phillips, however, states that at this time J.F. Fountain advised him not to cash the check as it was no good and that it would soon be redeemed for cash. Mr. Phillips contends that at this point in time J.F. Fountain forfeited any and all rights that he had to the rented real estate.[1] J.F. Fountain, on the other hand contends that the $1,900 check, the correct amount under the rent reduction agreement, was valid and that he never indicated to either of the plaintiffs that the check was no good
Subsequently, Mr. Phillips rented the remainder of the "Dairy Land" to one Mr. White and the "Row Crop Land" to one Mr McCullough. J.F. Fountain contends that he vigorously disagreed to this, but Mr. Phillips states that no disagreement existed and that both defendants had already forfeited their rights to this property when the new leases were signed *Page 617 
Finally, in February 1973, Gilmer Phillips entered into a sale contract with a "Jenny Gertz, Trustee" for the real estate in question. The sale price in this contract was considerably higher than the amount provided in the original Frank Fountain option and/or in the option claimed by J.F. Fountain to have been executed in December 1972. J.F. Fountain testified in his deposition that also in February, in the Phillipses' home, Mr and Mrs. Phillips returned the $1,900 check to him and informed him that "someone had offered them considerably more money for the land and they said they didn't want to sell it to me."
Shortly thereafter, J.F. Fountain filed the December option, the rent modification agreement, and the July 1972 lease agreement in the probate office of St. Clair County. While checking title to the property as required by the Gertz sale contract, it was discovered that these instruments had been recorded. This suit, to quiet title in Mr. and Mrs. Phillips, followed
On February 13, 1979, the Fountains filed a motion for summary judgment. This motion was never ruled upon by the trial court. On August 21, 1980, Mr. and Mrs. Phillips filed a motion for summary judgment. In support of this motion, the deposition of Gilmer Phillips was offered into evidence. The defendants did not offer any additional evidence to rebut the deposition of Mr. Phillips, though numerous documents and the depositions of Frank Fountain, J.F. Fountain, and Hubert Burns (Mrs Phillips' brother and the original attorney for Mr. and Mrs Phillips) were already before the court. On October 21, 1980, the trial court, after reviewing the interrogatories, depositions, and exhibits before it, entered summary judgment for the plaintiffs
Two issues are presented on appeal
(1) Whether materials not formally introduced in support of or in opposition to a motion for summary judgment, but "on file" as evidence of record, should be considered by the trial court when ruling on such a motion
(2) Whether there was a genuine issue as to any material fact so that the plaintiffs would not have been entitled to a judgment as a matter of law
We answer both in the affirmative
The plaintiffs, in their brief, contend that since the depositions of Hubert Burns, Frank Fountain, and J.F. Fountain were not offered by either party in support of or in opposition to the plaintiffs' motion for summary judgment, then they "were not considered by the trial judge in ruling on Plaintiffs' Motion For Summary Judgment and, in fact, should not have been considered." Plaintiffs rely heavily on Rule 56 (e), ARCP, in support of this proposition. The rule provides:
 (e) Form of Affidavits; Further Testimony; Defense Required. Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him. [Emphasis supplied.]
Rule 56 (e), ARCP
Plaintiffs would have this Court hold that unless a party formally introduces material in support of or in opposition to a motion for summary judgment, then that material cannot be considered. This contention is without merit
Rule 56 (c), ARCP, provides:
 (c) Motion and Proceedings Thereon. The motion shall be served at least 10 *Page 618 
days before the time fixed for the hearing. The adverse party prior to the day of hearing may serve opposing affidavits. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages. [Emphasis supplied.]
It is the law in Alabama, as well as in federal courts, that a trial court may properly consider any material that would be admissible at trial and all evidence of record as well as material submitted in support of or in opposition to the motion when ruling on a motion for summary judgment. Morris v. Morris,366 So.2d 676 (Ala. 1978). See also, 10 C. Wright A. Miller,Federal Practice and Procedure § 2721 (1973). We therefore hold that all evidence of record, as well as that evidence formally submitted in support of or in opposition to a motion for summary judgment, should be considered in ruling on the motion
A motion for summary judgment may be granted only when there is no genuine issue as to a material fact and the moving party is entitled to a judgment as a matter of law. Butler vMichigan Mutual Insurance Co. [1981] 402 So.2d 949 (Ala. 1981);Studdard v. South Central Bell Telephone Co., 356 So.2d 139
(Ala. 1978); Whitehead v. Davison Oil Co., 352 So.2d 1339 (Ala 1977)
The burden is thus upon the moving party to clearly show that the non-movant could not recover under any discernible circumstances, Whitehead v. Davison Oil Co., 352 So.2d 1339
(Ala. 1977); Browning v. Birmingham News, 348 So.2d 455 (Ala 1977); Fleming v. Alabama Farm Bureau Mutual Casualty InsuranceCo., 293 Ala. 719, 310 So.2d 200 (1975), and all reasonable doubts concerning the genuine issue of material fact must be resolved against the moving party. Campbell v. Alabama PowerCo., 378 So.2d 718 (Ala. 1979); Donald v. City National Bank,295 Ala. 320, 329 So.2d 92 (1976); Lovelace v. Graddick,295 Ala. 142, 325 So.2d 137 (1975)
This burden is substantially increased by the scintilla evidence rule. The scintilla rule requires that a summary judgment not be granted if there is a scintilla of evidence supporting the position of the non-movant. Browning vBirmingham News, 348 So.2d 455 (Ala. 1977); Folmar vMontgomery Fair Co., 293 Ala. 686, 309 So.2d 818 (1975). A scintilla of evidence requires only a mere gleam, glimmer, spark, the least bit, or the smallest trace in support of the nonmoving party to defeat a summary judgment motion. Watkins vSt. Paul Fire and Marine Insurance Co., 376 So.2d 660 (Ala 1979)
Applying the law to these facts, it is quite clear that several genuine issues of material fact remain. The depositions of the parties are in direct conflict in several instances and factual questions remain pertaining to the validity and possible alterations of the lease-option documents pertaining to the real estate in question
Since there does exist a genuine issue as to a material fact, summary judgment should not have been rendered. Accordingly, this case is reversed and remanded
REVERSED AND REMANDED
MADDOX, JONES, SHORES and BEATTY, JJ., concur
[1] If the facts are as claimed by Gilmer Phillips, then whether or not J.F. Fountain had immediately forfeited his rights to the property would depend upon the factual issue of whether the ninety-day grace period was in the original July 1972 contract, or was added by J.F. Fountain after the parties had executed the contract. *Page 619