The dispositive issue raised on appeal is whether the trial court properly granted defendants' motion for summary judgment. We conclude the trial court's judgment was proper.
The operative facts of this case are undisputed. On November 26, 1981, Ralph E. Silk, plaintiff/appellant, accepted four checks from Warrior Energy Corporation ("Warrior"). The four checks, which totaled $37,500, were all drawn on the Central Bank of Alabama, N.A., Haleyville, Alabama ("Central Bank") in payment of a debt. At the insistence of Warrior, Silk agreed not to deposit the checks until Warrior had sufficient funds in the account to cover them. Because Warrior agreed to pay Silk interest on the $37,500 loan, Silk decided to keep the checks dated November 26, 1981, instead of accepting from Warrior updated checks as substitutes for the original checks.
On or about February 4, 1982, Silk endorsed the checks and deposited them into a cash management account administered by Merrill Lynch, defendant/appellee, following assurances by Warrior that there were sufficient funds in its account to pay the checks. Merrill Lynch, after receiving the four checks, deposited the checks with its bank, First Alabama Bank of Huntsville ("First Alabama Bank"), which in turn *Page 114 
presented the checks to the drawee bank, Central Bank, for payment. Central Bank refused to honor the checks because of insufficient funds. Copies of the cancelled checks, which appear as a part of the record, indicate that First Alabama Bank cancelled its "endorsement" on February 11, 1982.
On March 1, 1982, Silk closed out his cash management account with Merrill Lynch by purchasing 5,000 shares of SCI Systems, Inc. stock. Prior to the purchase, Silk received confirmation from Merrill Lynch that his account balance was over $80,000. This balance included the $37,500 Silk had deposited on February 4, 1982. The total purchase price of the 5,000 shares of stock was approximately $102,000. Silk purchased the stock with the proceeds of his money fund shares in his Merrill Lynch cash management account and went on margin for the balance of the purchase price.
On April 15, 1982, Merrill Lynch notified Silk that Warrior's checks had been returned for insufficient funds and, accordingly, debited his margin account for the amount of the checks. In an affidavit, John Niedergeses, the operations manager of the Huntsville office of Merrill Lynch, stated that the "first notice" that his office had that the checks had been returned for insufficient funds was on April 13, 1982, and that Ralph Silk was notified on April 15, 1982, that his margin account was to be debited in the amount of $37,500 for the returned checks. Consequently, the debit balance in Silk's margin account was increased to approximately $59,000. Silk, feeling apprehension about the possibility of a margin call, sold the stock to eliminate the debit balance in his account, though after the sale the value of the stock increased.
Ralph Silk and Sylvia Silk brought action against Merrill Lynch for wrongfully debiting their cash management account. After its motion to dismiss was overruled, and after filing an answer, Merrill Lynch filed a motion for summary judgment which contained the affidavit of John Niedergeses. The Silks also filed a motion for summary judgment which included an affidavit of Ralph Silk. The court granted Merrill Lynch's motion for summary judgment and entered judgment in its favor. This appeal followed.
The usual rules governing our review of summary judgment apply here. The standard for summary judgment as set forth in Rule 56, Ala.R.Civ.P., has two basic parts: the trial court must determine (1) that there is no genuine issue of material fact, and (2) that the moving party is entitled to judgment as a matter of law. Houston v. McClure, 425 So.2d 1114, 1116 (Ala. 1983). Furthermore, this standard is conjunctive. Houston v.McClure, supra; McGuire v. Wilson, 372 So.2d 1297 (Ala. 1979). The burden is upon the moving party to clearly show that there is no genuine issue of a material fact, and all reasonable doubts concerning the genuine issue of material fact must be resolved against the moving party. Fountain v. Phillips,404 So.2d 614, 618 (Ala. 1981); Butler v. Michigan Mut. Ins. Co.,402 So.2d 949, 951 (Ala. 1981). The burden is further increased by the scintilla evidence rule, which requires that summary judgment not be granted if there is a scintilla of evidence supporting the position of the non-movant. Fountain v.Phillips, supra; Browning v. Birmingham News, 348 So.2d 455
(Ala. 1978).
When an instrument has been indorsed, the indorser "engages [unless the indorsement provides otherwise] that upon dishonor and any necessary notice of dishonor and protest that he will pay the instrument according to its tenor at the time of the indorsement to the holder. . . ." Code 1975, § 7-3-414. As a secondary party, an indorser's liability is subject to the conditions precedent of presentment, and proper notice of dishonor or protest. §§ 7-3-102 (1)(d), 7-3-501 (1)(b), and7-3-501 (2)(a). "Where without excuse any necessary presentment or notice of dishonor is delayed beyond the time when it is due . . . [the] indorser is discharged." § 7-3-502. See also §§ 7-3-508 (2) and 7-3-511.
The Silks contend that the liability of indorsement has been discharged in this *Page 115 
case because Merrill Lynch failed to give them timely notice of dishonor of the four checks. They further assert that had good business practices been followed, and "due diligence" been exercised, i.e., reading monthly banking statements, reviewing all returned checks, etc., Merrill Lynch would have had "notice or notification" prior to the lapse of seventy days that the checks had not cleared the drawer's bank. See § 7-1-201 (27).
Merrill Lynch submits that it complied with the notice of dishonor requirements of § 7-3-508 (2), by giving notice of the checks' dishonor before midnight of the third business day after it allegedly received notice of the dishonor. Merrill Lynch further posits that under the circumstances of this case, however, the notice of dishonor requirement was not applicable, citing § 7-3-501 (4), which reads: "Notwithstanding any provision of this section, neither presentment nor notice of dishonor nor protest is necessary to charge an indorser who has indorsed an instrument after maturity." (Emphasis added.)
The term "maturity" is not defined within the definitional provisions of the Uniform Commercial Code (UCC). Referring to decisions of courts from other jurisdictions as guidance in our interpretation as to what constitutes "after maturity," we have located but one case, and that case, as cited by Merrill Lynch in its brief, is Chandler Motors, Inc. v. Dunham,127 N.J. Super. 320, 317 A.2d 386 (1974). In Chandler Motors, the New Jersey Superior Court ruled:
 "Timely notice of dishonor was required to be given the indorsers, NJSA 12A:3-501 (2)(a), there being no legally recognized excuse for not giving it. See NJSA 12A:3-511. The failure to give timely notice of dishonor discharged the indorsers from any liability on the draft. 12A:3-502 (1)(a).
 "Plaintiff's argument that no notice of dishonor was required because allegedly the indorsements made by defendants were made `after maturity,' see NJSA 12A:3-501 (4), lacks merit. The last cited section applies only where the indorsement was made after the instrument was `overdue', a situation which did not exist in this case where the draft was indorsed by defendants within three days of its date of issue and 18 days before it was presented for acceptance. Here defendants had indorsed the draft before, not after, maturity."
127 N.J. at 128, 317 A.2d at 387.
Construing the phrase "after maturity" to mean "overdue," as did the New Jersey court, appears reasonable. The term "overdue," though not specifically defined, is nonetheless employed in sections of the UCC relative to checks which give it a more precise meaning. For example, one of the requirements for a holder in due course status is that the holder must take an instrument "without notice that it is overdue." § 7-3-302. An instrument is considered overdue after more than a "reasonable length of time after its issue," which is presumed to be thirty days. § 7-3-304 (3)(c). Paragraph 7 of the Official Comment states in pertinent part: "The `reasonable time after issue' is retained from original section 53, but paragraph (c) adds a presumption, as that term is defined in this act (7-1-201), that a domestic check is stale after thirty days." Indeed the thirty-day period is but a rebuttable presumption. One treatise on commercial paper notes:
 "Section 3-501 (4) provides as an absolute that an endorser taking an instrument after maturity is not entitled to fulfillment of the conditions precedent of presentment, notice or protest. No doubt this is based upon the rationale that the endorser could assume dishonor at that time. For demand instruments the maturity of which is a reasonable time after issuance, it may become debatable whether the endorser endorsed after maturity. For a check, Section 3-304 (3)(c) creates a presumption that a holder has notice that the check is overdue if taken more than thirty days after issuance or date. This does not fix thirty days as presumptive of maturity except by indirection. Further, the presumption is rebuttable and, in any event, does not apply to noncheck drafts *Page 116 
or to demand notes. Courts might reasonably develop a rule of thumb that endorsers who endorse any demand instrument after thirty days have the burden of showing that the instrument had not `matured' when they took it."
Hart and Willer, 2 Commercial Paper Under U.C.C. § 9.23 (Bender's Uniform Commercial Code Service 1983).
It is argued by the Silks that the checks were not indorsed after maturity because presentment on February 4, 1982, was pursuant to a verbal agreement between the drawer and the payee that the checks would not be presented when originally issued. This Court has held, however, that a demand instrument may not be altered or varied as to its maturity date by a parol agreement between the parties to the instrument. Jackson v.Sample, 234 Ala. 75, 77, 173 So. 510, 512 (1938); Flintkote Co.v. Grimes, 281 Ala. 707, 709, 208 So.2d 87, 89 (1968). By the terms of § 7-3-104 (2)(b), a check is considered a demand instrument.
In count 2 of their complaint, the Silks claim that Merrill Lynch breached the written agreement between the parties by debiting their account after a reasonable period of time had passed. After thoroughly reviewing the terms of the signed "Cash Management Account Agreement" between Merrill Lynch and the Silks, we do not find that the agreement precluded Merrill Lynch in this instance from debiting the Silks' account for the returned checks; therefore, Merrill Lynch did not breach the agreement as the Silks claimed.
The Court is of the opinion that summary judgment is appropriate in the instant case. The fact that summary judgment was properly granted, however, does not leave the Silks without the benefit of a remedy. By virtue of § 7-3-802, the Silks may seek recovery on the underlying obligation, i.e., the debt of Warrior Energy Corporation, which the checks were originally drawn to satisfy. Consequently, the judgment of the trial court is affirmed.
AFFIRMED.
TORBERT, C.J., and JONES, SHORES and BEATTY, JJ., concur.