486 So.2d 1263 (1986)
Mary Ann MORTON
v.
ALLSTATE INSURANCE COMPANY.
84-368.
Supreme Court of Alabama.
February 7, 1986.
Rehearing Denied March 31, 1986.
*1264 Robert H. Turner of Chestnut, Sanders, Sanders, Turner & Williams, Selma, for appellant.
Benjamin R. Rice of Williams, Spurrier, Moore, Rice, Henderson & Grace, Huntsville, for appellee.
MADDOX, Justice.
This appeal concerns an insurance company's alleged bad faith delay in paying insurance benefits. The trial court granted summary judgment in favor of the insurance company on plaintiff's claim of bad faith. Plaintiff appeals. We affirm.
On June 18, 1982, Charles and Mary Morton's house burned. The Mortons were joint owners of a homeowner's insurance policy issued by defendant Allstate Insurance Company. After the fire, the Mortons submitted a proof of loss statement to Allstate, claiming damages of $36,697.52. Allstate conducted an investigation into the cause of the fire and concluded that "Charles H. Morton intentionally caused the fire, resulting in the damages claimed," but that "Mary Ann Morton was [not] a party to the intentional burning of the ... home."
Allstate filed a complaint for declaratory judgment in the Madison County Circuit Court, requesting the court to determine:
"(A) Whether or not the plaintiff is in any way obligated to the defendant Charles H. Morton as a result of the said defendant's intentional burning of the insured *1265 premises and as a result of the material misrepresentation of the claim presented by the said defendant under the provisions of the policy of insurance.
"(B) The extent of the obligations of the plaintiff to the defendant Mary Ann Morton and the extent of the said defendant's interest in the proceeds of the policy of insurance in question.
"(C) ... [S]uch other, general and further relief as may be proper in the premises...."
After a hearing, the court issued a pretrial order containing the following statement as to the issues to be tried in the case:
"It was agreed by all of the parties that the following are all of the issues in controversy in this cause.
"Plaintiff seeks declaratory judgment under a policy of insurance issued to the defendants in which plaintiff contends that the defendant Charles Morton intentionally set fire to the property covered by insurance. The plaintiff further contends that there should be a determination if there is liability of the assessment of damages between Charles H. Morton and Mary Ann Morton.
"Defendants answer not guilty. Defendants are permitted to file their claim asserting damages as a result of the fire and seek their damages therefor.
"The defendant is also permitted for the purpose of preserving the claim of bad faith to assert that claim in order to toll the statute of limitations.
"The parties agree that the cause shall be tried on June 13, 1983, to a jury and that the issue of liability only be determined by a jury.
"The parties are requested to submit interrogatories to the court for its consideration and submission to the jury to determine the question of liability.
"If Allstate prevails in showing that Charles Morton wilfully and intentionally set fire to the insured premises, that will conclude his claim for damages. In that event Mary Ann Morton will be permitted to pursue her claim to a separate jury on the amount of damages. In the event Allstate does not prevail, then a separate jury will be empanelled to determine damages for both defendants." (Emphasis added.)
Pursuant to the agreement on the issue of bad faith, as set forth in the pretrial order, Ms. Morton filed the following counterclaim:
"Comes now defendant Mary Ann Morton and specifically makes a counterclaim against plaintiff under the following facts and circumstances:
"1. Mary Ann Morton was, on June 18, 1982, a named insured under policy number X-XX-XXXXXX, issued by plaintiff/counter-defendant Allstate Insurance Company.
"2. The said policy was a homeowners policy and covered the said Mary Ann Morton's residence and personal effects in a dwelling located at 6200 Sandia Boulevard, Northwest in Huntsville, Alabama.
"3. The said dwelling burned on June 18, 1982, and Mary Ann Morton duly filed a claim for her loss.
"4. Plaintiff/counter-defendant has, without good cause, refused to pay Mary Ann Morton for the loss or to negotiate with her concerning the loss.
"5. Plaintiff/counter-defendant's own investigation has confirmed that there is no good faith reason to deny Mary Ann Morton her benefits but instead of paying the loss, plaintiff/counter-defendant elected to file a lawsuit to further delay the payment of the claim and cause Mary Ann Morton further inconvenience, and attorney fees.
"6. Plaintiff/counter-defendant's actions represent a breach of the good faith duty owed defendant/counter-plaintiff Mary Ann Morton to investigate her loss, deal in good faith, and pay her the benefits due under the policy.
"WHEREFORE, defendant/counter-plaintiff Mary Ann Morton demands a judgment against plaintiff/counter-defendant Allstate Insurance Company in the sum of five hundred thousand ($500,000.00) *1266 dollars plus interest, costs and attorneys' fees."
On the day of the trial, before the jury was struck, the following exchange occurred between the court and counsel:
"THE COURT: The pretrial order of the 17th day of May, 1983 set forth a procedure for the trial of this case that the parties have agreed to change. The procedure outlined in the pretrial order was to submit the liability question first to a jury and then submit damages later. The parties have agreed rather than follow the procedure as set out in the pretrial order that we will try all claims except fraud and bad faith in this proceeding. So that we will try the complaint seeking a declaration of no insurance coverage as to the claim of Charles Morton.
"The defendant Mary Ann Morton moves the court for an order of partial summary judgment as to her claim for property damage, and that motion is granted, saving for a jury the determination of the amount and extent of damages suffered by her.
"[ALLSTATE'S COUNSEL]: Judge, for the benefit of the record, I'm not sure how much of that exchange was taken down, I would like it clear that at no time had Allstate by pleading or otherwise denied her claim, we were simply saying we had pled that we didn't have any evidence from which to deny it, so there had been no denial in any respect at that point. Let me just say for our purposes we had not denied her claim. I didn't want the making of a motion and granting of it to mean we had denied her claim, we had not.
"THE COURT: The plaintiff Allstate Insurance Company offers no resistance to the motion for partial summary judgment on behalf of the defendant Mary Ann Morton on the issue of liability.

"The issue of bad faith raised by the defendant Mary Ann Morton is severed." (Emphasis added.)
After the trial and the return of a verdict, the court entered the following judgment:
"Come the parties in this cause and join issue upon the complaint of the plaintiff and the answer and counterclaim as amended, for benefits under the insurance contract in question. The claims of the defendants based upon the tort of bad faith, which the defendants were permitted to assert in order to toll the statute of limitations, are severed and issue is not joined upon said claims. This cause coming on for trial upon the claims for which issue is joined, the jury is duly empanelled, sworn and charged according to law and, after hearing the evidence, comes a jury of good and lawful men and women, to-wit, Brenda D. Smith and eleven (11) others, who do say on their oath as follows:
"`We, the jury, find that the defendant, Charles Morton, is not entitled to recover under the policy of insurance issued by Allstate Insurance Company. We do find that the defendant, Mary Ann Morton, is entitled to recover under said policy and assess her damages at Ten Thousand Two Hundred Sixty Three and 45/100 ($10,263.45) Dollars.'
"By agreement of the parties, the jury demand was withdrawn for the purpose of calculating interest due on the claims of the defendant, Mary Ann Morton, under the insurance policy described in her counterclaim and the court calculated said interest on the jury's award of $10,263.45 at an interest rate of six (6) per cent per annum for 1.25 years for a total interest award of $769.76 to be added to the damages assessed by the jury in favor of the defendant, Mary Ann Morton, on her counterclaim.
"It is, therefore, ORDERED and ADJUDGED that the plaintiff is not obligated to the defendant, Charles H. Morton, under the policy of insurance issued by the plaintiff to the said defendant and it is further ORDERED and ADJUDGED that the defendant, Charles H. Morton, have and recover nothing of the plaintiff on the counterclaim filed herein by the *1267 said defendant for benefits under the policy of insurance issued by the plaintiff to the defendant.
"It is ORDERED and ADJUDGED that the obligation of the plaintiff to the defendant, Mary Ann Morton, under the policy of insurance issued by the plaintiff to the said defendant is determined to be Eleven Thousand Thirty Three and 21/100 ($11,033.21) Dollars, therefore, it is ORDERED and ADJUDGED that the defendant, Mary Ann Morton, have and recover of the plaintiff the sum of Eleven Thousand Thirty Three and 21/100 ($11,033.21) Dollars on her counterclaim for benefits due under the policy of insurance issued by the plaintiff to the said defendant."
After the court entered the judgment set out above, defendant Allstate moved for summary judgment on the issue of bad faith as to Ms. Morton:
"The plaintiff, Allstate Insurance Company, moves the court for summary judgment in its favor on the ground that there is no genuine issue as to any material fact and the plaintiff is entitled to a judgment as a matter of law.
"This motion is based upon the pleadings and evidence of record in this cause and upon the transcript of proceedings attached hereto as Exhibit `A'. In support of said motion, the plaintiff shows unto the Court as follows:
"1. In order for the defendant, Mary Morton, to make out a prima facie case of bad faith refusal to pay an insurance claim the proof offered by her must show that she is entitled to a directed verdict on her claim as a matter of law. National Savings Life Insurance Company v. Dutton, 419 So.2d 1357.
"2. The complaint for declaratory judgment filed by the plaintiff clearly states that the only issue between plaintiff and the defendant, Mary Ann Morton, was the amount to which she is entitled. Her right under the contract was never denied and the only issue that has ever existed was the amount to which she was entitled.

"3. On this one and only issue, the Court was unable to direct a verdict in favor of Mrs. Morton as evidenced by the transcript attached hereto as Exhibit `A' [omitted from this opinion] which sets forth the Court's ruling on the motions for directed verdict on behalf of Mary Ann Morton. As the transcript clearly notes, Mrs. Morton actually made two separate motions for two separate amounts and both motions were overruled by the Court.
"4. It is clear from the evidence and proceedings in this cause that the plaintiff's filing of a declaratory judgment action was entirely proper under the circumstances and that the plaintiff is entitled to summary judgment on the claims for bad faith refusal to pay an insurance claim." (Emphasis added.)
Ms. Morton filed no response to Allstate's motion for summary judgment, and the court, without opinion, granted summary judgment on the bad faith issue.
Ms. Morton appeals to this Court from the entry of summary judgment for Allstate.
Ms. Morton argues, in essence, that Allstate acted in bad faith in filing the declaratory judgment action and thereby delaying the payment of her claim, because Allstate's own investigation had revealed no reason to delay payment.
The elements of a bad faith cause of action in Alabama are:
"(a) an insurance contract between the parties and a breach thereof by the defendant;
"(b) an intentional refusal to pay the insured's claim;
"(c) the absence of any reasonably legitimate or arguable reason for that refusal (the absence of a debatable reason);
"(d) the insurer's actual knowledge of the absence of any legitimate or arguable reason;
"(e) if the intentional failure to determine the existence of a lawful basis is relied upon, the plaintiff must prove the insurer's intentional failure to determine *1268 whether there is a legitimate or arguable reason to refuse to pay the claim.
"In short, plaintiff must go beyond a mere showing of nonpayment and prove a bad faith nonpayment, a nonpayment without any reasonable ground for dispute. Or, stated differently, the plaintiff must show that the insurance company had no legal or factual defense to the insurance claim.
"The `debatable reason under (c) above means an arguable reason, one that is open to dispute or question. Webster's Third New International Dictionary (1931) at 116. See Chavers [v. National Security Fire & Cas. Co., Ala., 405 So.2d 1] at 10 [(1981)]; see also Embry, J., concurring on rehearing in Aspinwall v. Gowens, Ala., 405 So.2d 134 (1981)."
National Security Fire & Cas. Co. v. Bowen, 417 So.2d 179, 183 (Ala.1982).
In order to affirm Allstate's summary judgment, we must find that there was no genuine issue of material fact regarding the allegation of bad faith, and that Allstate was entitled to judgment as a matter of law. Watts Construction Co. v. Cullman County, 382 So.2d 520, 522 (Ala. 1980). In other words, "[i]f there exists "a mere gleam, glimmer, spark, the least bit, the smallest trace" of evidence or an inference therefrom that supports Ms. Morton's counterclaim based on bad faith, Allstate's summary judgment must be reversed. Fountain v. Phillips, 404 So.2d 614, 618 (Ala.1981). Our review of the propriety of the trial court's grant of summary judgment includes "all evidence of record, as well as that evidence formally submitted in support of or in opposition to [Allstate's] motion." Id.
Allstate predicated its summary judgment motion on the fact that the trial court in the declaratory judgment action refused to direct a verdict for Ms. Morton and on the trial court's determination that "the evidence and proceedings in this cause" show that Allstate's "filing of a declaratory judgment action was entirely proper under the circumstances."
We have held that "[i]n the normal case in order for a plaintiff to make out a prima facie case of bad faith refusal to pay an insurance claim, the proof offered must show that the plaintiff is entitled to a directed verdict on the contract claim and thus entitled to recover as a matter of law." National Savings Life Insurance Co. v. Dutton, 419 So.2d 1357, 1362 (Ala. 1982). Thus, a plaintiff in a bad faith action need only be entitled to a directed verdict on the underlying contract claim in order to make out a prima facie case of bad faiththe plaintiff need not actually have received a directed verdict. In other words, the actual failure of a plaintiff to receive a directed verdict on the contract claim does not necessarily preclude the establishment of a prima facie case of bad faith, and this is so even though, as here, the contract claim is fully litigated as a declaratory judgment action.
In Federated Guaranty Life Ins. Co. v. Bragg, 393 So.2d 1386 (Ala.1981), this Court, speaking through Justice Shores, discussed the unique application of the Declaratory Judgment Act to insurance contracts, as follows:
"Federated [Guaranty Life Insurance Company] is entitled to have the issue raised by its action for declaratory judgment resolved by the trier of the facts, in this instance, the jury. The declaratory judgment act which has been in effect in this state since 1935 has for its purpose `to settle and to afford relief from uncertainty and insecurity with respects to rights, status and other legal relations and is to be liberally construed and administered.' Code of Ala. 1975, § 6-6-221. Section 6-6-223 specifically provides that any party to a contract may bring a declaratory judgment action to determine the validity of that contract. It was that statutory remedy which Federated sought by way of its action asking that the court declare the contracts of insurance invalid in this instance. It seems to be Bragg's position that because he had not filed a claim under the policy provision providing for waiver of premiums, the declaratory judgment action *1269 was moot. We cannot agree. It has frequently been noted that the declaratory relief provided for in the declaratory judgment acts is especially useful in insurance policy disputes. Borchard's Declaratory Judgments (2nd ed.1941). Neither party to an insurance contract should be compelled to wait until the events giving rise to liability have occurred before having a determination of the rights and obligations under the policy. Professor Borchard has said:
"`The fact that insurance contracts are often of long duration, involve fiduciary relationships, depend upon representations, facts and conduct which the company finds it difficult to control, look to future contingencies and benefits and, in the event of loss, create new relationships between the insurer, the injured person or beneficiary and the insured or principal debtor, has produced legal uncertainties which the declaratory action has done much to allay.'
"Borchard's Declaratory Judgments (2nd ed.1941), p. 634. Under the facts of this case, either party to the contract was entitled to bring an action for declaratory judgment. When Federated returned the premiums submitted to it by Bragg after its attempted rescission of the contract, Bragg was entitled to have the validity of the policies determined. Likewise, inasmuch as Federated took the position that the contracts had been legally cancelled and Bragg denied that they had, then Federated was likewise entitled to have that issue determined. As Professor Borchard states:
"`Instead of awaiting the pleasure of the accuser or claimant in bringing his demand or claim to adjudication, legislators and courts have found that social peace is promoted by taking under judicial cognizance the desire of the party charged or in jeopardy to be relieved of the peril, the insecurity and the uncertainty created by an unjust claim, actual or potential. The procedure for declaratory adjudication has thus served as a stabilizer of legal relations.'
"Borchard's Declaratory Judgments, supra, p. 645.
"Uncertainties created by claims of misrepresentation in the issuance of insurance policies are peculiarly suited to resolution by way of declaratory judgment actions. The policies involved in this case provide that the policy shall be incontestable after a period of two years from the date of issue, except for nonpayment of premiums. Because of that provision, Federated would be bound by the terms of the policy to pay the life insurance proceeds to Bragg's beneficiary notwithstanding the misrepresentations allegedly made with respect to the condition of his health at the time of issue, if not raised within two years of the date of issue. Therefore, Federated had a compelling reason to seek a judicial determination of its liability under these policies, and the trial court erred in dismissing its action for declaratory relief.
"At 26 C.J.S. Declaratory Judgments § 161 (1956), pp. 374-375, the following appears:
"`[I]t is the duty of the judge to adjudicate the decisive issues involved in the controversy ... and to make binding declarations concerning such issues, thus putting the controversy to rest, and ordinarily it should make such an adjudication regardless whether the decision is for or against plaintiff.... [O]rdinarily, where plaintiff is not entitled to a favorable declaration, the court should render judgment embodying such determination and should not merely dismiss the action.'
"See also Johnson v. Sweeney's Lane Church of God, Inc., 270 Ala. 260, 116 So.2d 899 (1960).
"We hold that Federated is entitled to a declaration of whether it is entitled to rescind these policies based upon the alleged misrepresentation made by Bragg in his applications for insurance."
Of course, the mere filing of a declaratory judgment action would not preclude the *1270 maintenance of a bad faith cause of action in a proper case. As the Court pointed out in Safeco Ins. Co. of America v. Sims, 435 So.2d 1219 (Ala.1983):
"Safeco argued that the court's finding in the declaratory judgment action of the existence of a `justiciable controversy' as a matter of law barred the bad faith action because of this language. On the other hand, the Simses argued that the finding of a justiciable controversy in the declaratory judgment action is no more than a finding that an issue was made up by Safeco's unjustified denial of coverage. Moreover, they argued that the finding of a justiciable controversy in no way reflects any merit in Safeco's denial of coverage and should not be a defense to their suits for bad faith.
"If we accept Safeco's arguments, the finding of a justiciable controversy would bar a bad faith claim. If none was found, there would be a bad faith claim. We do not believe that either the insurer or the insured would want to speculate on the result of a declaratory action, to defend or to bring a bad faith claim. Moreover, if Safeco's argument were valid, there would be a race to the courthouse to file a declaratory action if the insurer denied the insured's claim.
"We are of the opinion that the finding of a justiciable controversy is not the determining factor of whether there was or was not bad faith on the part of an insurance company to pay a claim. The standard for testing a bad faith claim is not found in either the adjudication of a justiciable controversy or the judgment on the merits of the contract claim." (Emphasis added.)
Consequently, we must look past the court's denial of Ms. Morton's directed verdict motion and to the "evidence and proceedings in this cause" to determine if Ms. Morton has made out a prima facie case of bad faith.
We were able to glean the following facts from the transcript of the proceedings in the declaratory judgment action: Upon investigating the Mortons' insurance claim, Allstate discovered evidence to the effect that the house had been burglarized immediately preceding the fire, and thus, much of the property the Mortons listed in their proof of loss may not have been in the house at the time the fire occurred. Furthermore, even had there been no evidence of burglary, Allstate could not determine what amount to pay Ms. Morton because the Mortons had filed a joint proof of loss and it was not ascertainable what property listed was Ms. Morton's. When testifying as to what her loss from the fire was, Ms. Morton herself said that her testimony was "still a guesstimate."
The foregoing evidence convinces us that Allstate had a debatable reason,i.e., one open to dispute or question, for delaying payment of Ms. Morton's insurance claim because the amount of Ms. Morton's loss could not be determined; therefore, based on the evidence before us, Ms. Morton failed to prove one of the elements of a bad faith cause of action and did not establish a prima facie case of bad faith.
Although Ms. Morton filed no response to Allstate's summary judgment motion, in her brief on appeal she points to the summary judgment rendered in her favor at the beginning of the declaratory judgment action and argues that it provides a scintilla of evidence of bad faith so that she "is entitled to a jury trial on the issue of bad faith," and that Allstate's summary judgment was improperly granted. Her argument, however, is misplaced.
The summary judgment granted Ms. Morton does not evidence that she is entitled to recover from Allstate as a matter of law, because it was only a partial summary judgment. The summary judgment was granted only on the issue of Ms. Morton's entitlement to coverage under the policy. Even if she was entitled to coverage, without proof of loss Ms. Morton was not entitled to recover anything from Allstate; she could not recover until the amount of her loss could be determined, i.e., until the issue of the amount of her loss was tried and submitted to a jury. The jury ultimately determined the loss to *1271 be $10,263.45. Thus, Ms. Morton's partial summary judgment in the declaratory judgment action does not provide a scintilla of evidence of any bad faith on the part of Allstate that would require reversal of Allstate's summary judgment. Moreover, even if Ms. Morton had received a "full" summary judgment or a directed verdict on the contract claim, then, as we have already discussed, based on the evidence of record, she still would not have been entitled to one, because the evidence shows that Allstate had a debatable reason for delaying payment of her claim, namely, uncertainty as to the amount of Allstate's liability.
We find that there is no genuine issue of material fact regarding Allstate's alleged bad faith and that Allstate is entitled to a judgment as a matter of law. The summary judgment appealed from is due to be, and it hereby is, affirmed.
AFFIRMED.
TORBERT, C.J., and FAULKNER, SHORES, BEATTY and HOUSTON, JJ., concur.
JONES and ADAMS, JJ., concur specially.
JONES, Justice (concurring specially).
I write separately to caution the reader not to interpret this Court's opinion as failing to take into account the context in which the separate claims were presented (the damages claim for breach of contract in the first phase of the trial and the bad faith claim in the second phase).
The essential elements of Ms. Morton's bad faith claim, in theory, are not defeated by the insurer's merely asserting that it had never denied her claim and by electing to leave the assessment of her damages to the determination of a jury. Indeed, this attitude, under all the attendant circumstances, could constitute the tort of bad faith. The failure of the insurer to discharge its legally imposed duty to exercise a good faith effort to adjust Ms. Morton's claim (the amount of the claim being the only dispute) either occurred before the insurer initiated the declaratory judgment litigation or it did not occur.
The focus here is not on the insurer's asserted contest of Ms. Morton's claim at trial, but upon its affirmative conduct in response to the filing of her proof-of-loss statement. Even though it had a legitimate defense of noncoverage as to Mr. Morton's claim, the insurer could not discharge, as a matter of law, its obligation of good faith to Ms. Morton simply by joining both insureds as defendants in a declaratory judgment suit and casting on her the burden of proving her damages. This leaves unanswered the crucial question of the insurer's course of conduct before it filed the declaratory judgment suit.
Notwithstanding these established principles governing the insurer's duty of good faith, I agree that the trial court correctly granted the insurer's motion for summary judgment; and this for the reason that Ms. Morton contested the motion on the single ground that she had obtained a partial summary judgment (on the issue of coverage). The insurer's evidence in support of its motion was not affirmatively responded to by way of a counter affidavit setting forth Ms. Morton's version of the facts respecting settlement negotiations (or the lack of them); i.e., she never placed the insurer's factual averments in issue. To be sure, the issue of damages may be a legitimate basis for denial of a claim; and the insurer's motion for summary judgment, with supporting evidence, raised this defense. Because it was met with silence on the part of the insured, no genuine issue of material fact existed; thus, the trial court had no choice but to grant the motion.
ADAMS, J., concurs.