PER CURIAM.
This is an appeal from a summary judgment entered in favor of the insurer, Motors Insurance Corporation (MIC), in an uninsured/underinsured motorist case.
On Saturday, May 22, 1993, Troy C. Faulk entered into negotiations with the Performance Toyota automobile dealership for the purchase of a 1991 Pontiac Grand Am automobile. While at the dealership, Mr. Faulk signed several documents, including a “vehicle retail buyer’s order”; a “customer checklist”; a credit application; an agreement to provide accidental physical damage insurance within 15 days; and a “motor vehicle installment sales contract.” These documents do not appear to have been signed by a repre *2 sentative of Performance Toyota. Mr. Faulk was allowed to take the Grand Am home for the weekend, for what he described as a test drive. He testified by deposition that he had to return the car to Performance Toyota on Monday. Mr. Faulk also testified that he did not believe that he had reached a final agreement with Performance Toyota because they had not agreed on a purchase price for the Grand Am. It is undisputed that the purchase of the Grand Am was contingent on a lender’s approving Mr. Faulk’s credit application. It is also undisputed that his application was denied.
After leaving the dealership, Troy Faulk and his wife Kellie Faulk drove to the home of Troy Faulk’s parents. They left his parents’ home later that night, and were en route to their home with their son Justin, when they were involved in a head-on collision with a truck driven by Roy E. Stamps. The truck was owned by Stamps’s employer, Louis Staville, and was insured by Progressive Insurance Company. After the accident, Stamps was arrested and was charged with first degree assault; his blood alcohol level at the time was .288%. The Faulks were seriously injured in the collision and, as a result, incurred approximately $34,000 in medical expenses.
Mr. and Mrs. Faulk retained an attorney after the accident. On May 24,1993, Performance Toyota received a document rescinding the agreement on the Grand Am. This document is allegedly signed by Mr. Faulk, but he contends that he does not remember signing such a document.
In December 1993, the Faulks settled with Staville and his insurer for $40,000 and released them from further liability for claims arising out of the accident. After this settlement, the Faulks changed attorneys. In October 1994, the Faulks’ new attorney wrote Performance Toyota to inquire about its uninsured/underinsured motorist coverage. In November 1994, the Faulks’ attorney notified MIC, Performance Toyota’s uninsured/underinsured motorist carrier, about their settlement with Staville.
The Faulks sued Stamps and MIC. Their claims against MIC are based on the insurance policy it issued to Performance Toyota. The trial court entered a summary judgment in favor of MIC; the Faulks appealed to the Alabama Supreme Court, which transferred the case to this court pursuant to § 12-2-7(6), Ala.Code 1975.
In order to enter a summary judgment, the trial court must determine that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law. Rule 56(c), Ala. R. Civ. P.; Silk v. Merrill Lynch, Pierce, Fenner & Smith, 437 So.2d 112 (Ala.1983). For cases filed after June 11, 1987, Rule 56 is read in conjunction with the “substantial evidence rule,” § 12-21-12, Ala.Code 1975. See Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala.1989). To defeat a properly supported motion for a summary judgment, the plaintiff must present “substantial evidence,” i.e., “evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989).
On appeal, the Faulks argue that the Grand Am was owned by Performance Toyota at the time of the accident and that they are entitled to insurance coverage under its policy with MIC.
First, the Faulks contend that they were not “owners” of the Grand Am, according to the language of § 32-7-2(8) of Alabama’s Motor Vehicle Safety-Responsibility Act, and that, therefore, the trial court erred in entering the summary judgment on this basis. The applicable code section provides:
“OWNER. A person who holds the legal title of a motor vehicle, or in the event a motor vehicle is the subject of an agreement for the conditional sale or lease of the motor vehicle with the right of purchase upon performance of the conditions stated in the agreement and with an immediate right of possession vested in the conditional vendee, or lessee, or in the event a mortgagor of a vehicle is entitled to possession, then the conditional vendee, or lessee, or mortgagor shall be deemed the *3 owner for the purposes of this subdivision.”
§ 32-7-2(8), Ala.Code 1975.
A fundamental rule of statutory construction is that words must be given their plain, ordinary, and commonly understood meaning. AU Hotel, Ltd. v. Eagerton, 689 So.2d 859 (Ala.Civ.App.1996). The statute clearly defines “owner” as one who holds legal title to the vehicle or one with an agreement for the conditional sale of the vehicle with an immediate right to possession. Clearly, “conditional sale” refers to the common agreements in which legal title to a vehicle is held by the seller and the buyer has the right to receipt of title upon meeting certain conditions, such as making monthly payments of the purchase price. However, this is not a case of such a “conditional sale.” In this case, the agreement itself was contingent and had not reached the point of being a “sale,” i.e., the agreement itself had never been finalized. It is undisputed that title had not passed to the Faulks at the time of the collision. In addition, it is undisputed that no agreement to sell or to purchase had been finalized because Mr. Faulk’s credit application had not been approved. It does not appear that § 32-7-2(8) was intended to encompass a situation such as this one, in which the Faulks had neither an agreement for sale nor a right of possession. See Merritt v. Wayne Gargus Pontiac-GMC Truck, Inc., 686 So.2d 340 (Ala.Civ.App.1996) (holding that, because the plaintiff failed to obtain financing as required by her lease agreement, she had no immediate right to possession of the vehicle and could not support a claim for conversion). Therefore, the trial court erred in entering the summary judgment on the basis that, as a matter of law, the Faulks were owners of the car.
The Faulks also argue that the trial court erred in entering the summary judgment on the ground that they had failed to comply with the notice provisions in the policy MIC issued to Performance Toyota. The insurance policy issued by MIC to Performance Toyota provides in pertinent part:
“A. COVERAGE
“1. We will pay all sums the ‘insured’ is legally entitled to recover as damages from the owner or driver of an ‘uninsured motor vehicle’. The damages must result from ‘bodily injury’ sustained by the ‘insured’ caused by an ‘accident’. The owner’s or driver’s liability for these damages must result from the ownership, maintenance or use of the ‘uninsured motor vehicle’.
“2. If this insurance provides a limit in excess of the amounts required by the applicable law where a covered ‘auto’ is principally garaged, we will pay under this coverage only if a. or b. below applies:
“a. The limits of any applicable liability bonds or policies have been exhausted by judgments or payments; or
“b. A tentative settlement has been made between an ‘insured’ and the insurer of a vehicle described in paragraph b. of the definition of ‘uninsured motor vehicle’; and we:
“1. Have been given prompt written notice of such tentative settlement; and
“2. Advance payment to the ‘insured’ in an amount equal to the tentative settlement within 30 days after receipt of notification.
[[Image here]]
“E. CHANGES IN CONDITIONS
“The CONDITIONS are changed for UNINSURED MOTORISTS COVERAGE as follows:
[[Image here]]
“2. DUTIES IN THE EVENT OF ACCIDENT, CLAIM, SUIT OR LOSS is changed by adding the following:
[[Image here]]
“b. Promptly send us copies of the legal papers if a ‘suit’ is brought.
“A person seeking Uninsured Motorists Coverage must also promptly notify us in writing of a tentative settlement between the ‘insured’ and the insurer of a vehicle described in paragraph b. of the definition of ‘uninsured motor vehicle’ and allow us 30 days to advance payment to that insured in an amount equal to the tentative settlement to preserve our rights against the insurer, owner or operator of such a vehicle de *4 scribed in paragraph b. of the definition of ‘uninsured motor vehicle’.
[[Image here]]
“F. ADDITIONAL DEFINITIONS
[[Image here]]
“3. ‘Uninsured Motor Vehicle’ means a land motor vehicle or trailer:
[[Image here]]
“b. That is an underinsured motor vehicle. An underinsured motor vehicle is a motor vehicle or trailer for which the sum of all liability bonds or policies at the time of an ‘accident’ provides a limit that is less than the amount an ‘insured’ is legally entitled to recover as damages caused by the ‘accident’.... ”
The trial court held that the Faulks were, as a matter of law, precluded from uninsured/underinsured coverage under the policy issued to Performance Toyota by MIC, because the Faulks settled with Staville, the owner of the other vehicle, without notifying MIC. In so ruling, the trial court relied on Lambert v. State Farm Mut. Auto. Ins. Co., 576 So.2d 160, 167 (Ala.1991), in which the Alabama Supreme Court set out a six-step procedural guideline to be followed in cases where the rights of the insured may conflict with those of the underinsured motorist carrier. The guidelines are, however, “general rules,” and the “facts and circumstances of each individual case” must be taken into account. Id. at 167.
In considering the facts and circumstances of this particular case, we conclude that the Faulks should not be precluded from coverage under the policy MIC ■ issued to Performance Toyota because of the failure to notify MIC of their settlement with Staville. From a careful reading of the six-step procedure set out in Lambert, it does not appear that the procedures specifically apply to this situation, in which the Faulks settled with a tortfeasor other than the uninsured motorist. This Court has previously held that “[t]here can be no liability-limiting clause restricting an insured from recovering actual damages suffered within the limits of the policy of uninsured motorist insurance,” and that the “subrogation clause, when applied to settlement or recovery from tort-feasors other than the uninsured motorist is invalid and contrary to the intent of the uninsured motorist statute.” Alabama Farm Bureau Mut. Cas. Ins. Co. v. Humphrey, 54 Ala.App. 343, 346-47, 308 So.2d 255, 257-58 (1975); see also Alabama Farm Bureau Mut. Cas. Ins. Co. v. Clem, 49 Ala.App. 457, 273 So.2d 218 (1973).
The trial court erred in entering the summary judgment. That judgment is reversed and the cause is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
YATES and MONROE, JJ., concur.
ROBERTSON, P.J., concurs in the result.
CRAWLEY and THOMPSON, JJ., dissent.